**CITIZENS FIDELITY INSURANCE COMPANY, Appellant,**

v.

**Arthur LANGLOTZ, Appellee.**

No. 5275.

Court of Civil Appeals of Texas, Waco.

June 28, 1973.

Rehearing Denied Aug. 2, 1973.

———◆———

W. E. Cureton, Waco, for appellant.

Marshall W. Dooley, Dallas, for appellee.

## OPINION

McDONALD, Chief Justice.

This is an appeal by defendant Insurance Company from judgment against it on a life insurance policy rendered on a jury verdict.

On March 20, 1969 James R. Langlotz purchased a new automobile and financed it through the Westview National Bank. At the same time he purchased a credit life insurance policy from defendant insurance company. On March 28, 1970 there was $3,146 owed by Langlotz to the Bank on the automobile, and on that date Langlotz died as a result of a gunshot wound. Langlotz estate paid the Bank, and his father Arthur Langlotz as his sole heir instituted this suit against defendant insurance company on the policy. Defendant by answer plead the policy provided an exclusion from coverage if the insured committed suicide, that the insured committed suicide, and prayed plaintiff take nothing.

Trial was to a jury which found:

"Issue 1. Do you find from a preponderance of the evidence that on or about March 28, 1970, Jimmy R. Langlotz committed suicide?"

"Answer: Did Not"

"You are instructed that suicide means the intentional taking of one's own life."

Plaintiff filed motion for judgment on the verdict, and defendant filed motion for judgment Non Obstante Veredicto, asserting there was no evidence to support the jury's answer to the issue submitted, and that the undisputed evidence shows deceased did commit suicide.

The trial court denied defendant's Motion for Judgment Non Obstante Veredicto; granted plaintiff's motion; and entered judgment for plaintiff for $3,146, 12% penalty, and $450 attorney's fees.

Defendant appeals on one point: "The trial court erred in overruling defendant's Motion for Judgment Non Obstante Veredicto because the undisputed evidence shows that James R. Langlotz committed suicide on March 28, 1970."

The policy provides: "Exclusions—Suicide: If, within two years from the effective date of coverage hereunder, the Debtor shall commit suicide, or if death results from intentionally self inflicted injury, while Debtor is either sane or insane, the liability of the Company shall be limited to the amount of the unearned premiums paid hereon."

On March 28, 1970 Langlotz and Mr. James Muhl, both in their early twenties were living at 3215 Maple, Waco, Texas. At approximately 7 p. m. the two boys had as guests at their house Langlotz's girl friend Susan Farley, Muhl's girl friend, Langlotz's brother and his wife, and Muhl's brother and his wife. It was the Saturday evening before Easter. The

group drank beer for an hour or more, then left for a visit with Muhl's mother, where they continued drinking until 9:30 or 10 p. m. when they went to a Pizza Restaurant. At the Pizza place they ate pizza and continued to drink beer. About 12 o'clock Langlotz left and took his girl friend Susan Farley home. Langlotz and Susan had been arguing during the evening. Langlotz returned to the Pizza place and continued to drink beer. He called his mother about 12 o'clock to ascertain the time church services were to be held the next morning and told her he would be there. Muhl the only person present when Langlotz was shot, testified to the following: Langlotz told Muhl when he returned that he was free and that he had broken up with his girl friend; (altho the girl friend testified she and Langlotz had plans for the following day). About 1 a. m. the group broke up and Langlotz, Muhl and Muhl's girl friend drove to the house where Langlotz and Muhl resided. Langlotz was emotional and upset and cried in the car on the way home. As Muhl and his girl friend started to leave and Langlotz came out of the house he asked if the shotgun had been recently cleaned. Muhl advised that it had. Muhl and his girl friend became concerned and drove around the block and returned to the house. Muhl went into the house and, before Langlotz knew of his presence, Muhl looked through the front door window and saw Langlotz sitting in a chair holding the shotgun. When Muhl walked in Langlotz put the gun back in the corner. Langlotz would hardly talk to Muhl and he seemed like he was concentrating or thinking about other things. He told Muhl he had some problems and Muhl told him not to let it get him down. Muhl sat down beside Langlotz. Langlotz said "something about going hunting; said something about hunting himself." Muhl dropped his head "and the next thing I can recall is either I had looked over or right after it happened or during the time it was happening I don't

realize but he was stooped over the gun and I think possibly the shot was what caused me to look over and he slumped to the floor * * * * he was stooped over with hands outstretched * * with the gun barrel in his middle * * and his hands outstretched to the gun barrel." When he was over the gun barrel, he wasn't engaged in cleaning the gun.

Muhl further testified:

"Q. Had he said something about doing away with himself?

A. Just the only reference that I could give to that would be that he said he was going to go hunting and I asked him what he was going to hunt and he said himself."

The shotgun charge went into his lower abdomen. This followed the statement he made about hunting himself. Langlotz died from this injury.

As noted the jury found that Langlotz did not intentionally take his own life; and the trial court overruled defendant's Motion for Judgment Non Obstante Veredicto.

For the trial court to have granted the Motion for Judgment Non Obstante Veredicto or for this court to sustain defendant's point, there must have been no evidence having probative force upon which the jury could have made its finding. Burt v. Lochausen, 151 Tex. 289, 249 S. W.2d 194.

We think that the jury's answer is without support in the evidence; and that the evidence establishes as a matter of law that Langlotz committed suicide, (that is intentionally took his own life). Defendant's point is sustained.

The judgment is reversed and judgment here rendered that plaintiff take nothing.

Reversed and rendered.