Arthur **LANGLOTZ**, Petitioner,

v.

**CITIZENS FIDELITY INSURANCE COMPANY**, Respondent.

No. B–4195.

Supreme Court of Texas.

Jan. 16, 1974.

Rehearing Denied Feb. 20, 1974.

**CIBA–GEIGY CORPORATION**, Petitioner,

v.

**ESTES CHEMICAL CORPORATION**, Respondent.

No. B–4344.

Supreme Court of Texas.

Feb. 6, 1974.

Herndon, Girand, Smith & Kolodey, Marshall W. Dooley, Dallas, for petitioner.

Sheehy, Cureton, Westbrook, Lovelace & Nielsen, W. E. Cureton, Waco, for respondent.

GREENHILL, Chief Justice.

In this suit on a life insurance policy, the only question before us is whether there is some evidence to support the jury's verdict that the insured did not commit suicide. We hold that there is some such evidence. We, therefore, reverse the judgment of the court of civil appeals which held that, as a matter of law, there was a suicide. 497 S.W.2d 493. We affirm the judgment of the trial court which had entered a judgment for the plaintiff on the jury's verdict.

■ No new question of law is before us, and no useful purpose would be served by an extended opinion. The facts, many of which would indicate suicide, are set out in the opinion of the court of civil appeals.

They will not be repeated here since our function is to determine whether the evidence, viewed most favorably in support of the jury's verdict amounts to more than a scintilla of evidence to support such verdict. The question as to whether there is "some evidence" is, in many instances, a difficult one; and, under the circumstances presented here, it is necessarily a judgment call. It is not within our jurisdiction to weigh the evidence and to determine what we think happened.

The definition of "suicide" given to the jury, and as to which there was no objection, was, "You are instructed that suicide means the intentional taking of one's own life."

We regard the following facts and circumstances as constituting more than a scintilla of evidence that there was not an intentional taking of the life of the insured: Jimmie Langlotz, the 23 year old insured, lived in an apartment in Waco with two other young men. His mother and father also lived in Waco, and Jimmie talked to his mother every day. He had no emotional problems that she knew of.

The events leading to Jimmie's death began on the Saturday before Easter. He had called his mother that Saturday morning and had made arrangements to go to sunrise Easter services with her the following morning. The gunshot occurred about 1:30 on Easter morning, but Jimmie had called his mother around midnight to reconfirm their going to church at 7:30 a. m. His mother did not notice anything unusual in the conversation.

There was evidence that the insured, after 1:00 a. m., asked his roommate whether the guns had been cleaned; and it is undisputed that the gun cleaning equipment had been obtained and opened by the insured before the gunshot occurred. Pictures taken after the shooting, and introduced without objection, showed the cleaning rod beside the shotgun.

There was evidence that the insured had been drinking beer at least since about 9:30 p. m. Saturday night; and by 1:00 a. m., he was emotionally upset. But his roommate, James Muhl who was with the insured all evening and at the time of the shooting, testified that while the insured was "considerably" emotionally upset that night, he (Muhl) did not think he (Jimmie) would shoot himself. He testified that, "I have known him all his life, and I didn't feel like it was that big a thing. I had seen him down before."

The insured had made plans to be with his girl friend the next day, and he had participated on that Saturday afternoon in preparing Easter eggs for a picnic on Easter Sunday. He did not appear to be emotionally disturbed until after he had been to a pizza parlor and had consumed "several beers." At that dinner party, the group had ordered several pitchers of beer.

There is a good deal of evidence that the insured was intoxicated by 1:30 a. m. The jury could reasonably assume, under all of the circumstances, that an intoxicated man would be more likely than a sober man to handle a weapon carelessly.

■■ To overturn a jury verdict in a case of this character, we must be convinced that all of the evidence, viewed in the light most favorable to the insured, *proves suicide so conclusively* that reasonable minds could not, from that evidence, reach any other conclusion. Prudential Insurance Co. v. Krayer, 366 S.W.2d 779 (Tex.1963); United Fidelity Life Insurance Co. v. Adair, 29 S.W.2d 944 (Tex. Com.App.1930, judgment adopted). We cannot say, as a matter of law, that the record proves suicide.

The respondent insurance company did not, in the court of civil appeals, raise points as to the sufficiency of the evidence or as to whether the verdict of the jury was against the great weight and preponderance of the evidence.

The judgment of the court of civil appeals is reversed, and the judgment of the trial court is affirmed.

WALKER and POPE, JJ., note their dissent.