Billy W. BERNARD, et al., Appellants,

v.

**DRESSER INDUSTRIES, INC., Appellee.**

No. 09 84 276 CV.

Court of Appeals of Texas, Beaumont.

Opinion filed April 18, 1985.

Rehearing Denied May 9, 1985.

Cris E. Quinn, Beaumont, for appellants.

Lawrence Louis Germer, Beaumont, for appellee.

## OPINION

BROOKSHIRE, Justice.

On November 2, 1979, the Appellant was seriously injured, according to his evidence and testimony, while testing a length of pipe, being an expansion joint. Bernard was employed by Ford, Bacon & Davis, a construction contractor. The expansion joint was a hollow pipe, round and shaped something like an accordian. The "expansion joint" allows the pipeline to expand and contract due to fluctuations in weather conditions or other operating circumstances in the pipe system. The testing procedure was to insure that this particular expansion joint was functional and would not leak. Appellant was working with another pipe-fitter, Watz, under the direction and instruction of their foreman, Michael Gillespie. The fitters were instructed to put solid pieces of metal known as "blind flanges" on both ends of the joint and to pump approximately 15 pounds of air pressure into the joint to test it for air leaks. Watz obtained a 30 pound Ashcroft pressure gauge that very morning from the engineering department of the Gulf Refinery, being the scene of the work. This 30 pound Ashcroft gauge was to be used to measure the air pressure within the expansion joint during the 15 pound test.

Undoubtedly and unquestionably this was the ordinary use and purpose of the pressure gauge. Watz and Gillespie obtained the gauge personally. They observed the Gulf engineer remove the gauge from a closed, unopened, cardboard box which appeared to be a new box. They described the colors of the box as blue and white. The box was not torn, discolored, crushed, soiled or worn in any way. The evidence is abundant that the 30 pound Ashcroft gauge appeared to be new if not actually brand new in appearance. It was not scratched, dirtied, dented, rusted, broken, corroded nor tarnished. There is some probative evidence showing that a plastic cap on the bottom of the nipple portion was still on the gauge when it was taken out of the box. There was some evidence of probative force to show that gauges used in testing were not put back into their boxes. There was no evidence of mistreatment, in any manner, of the gauge and it looked like it was in the same condition as when it was purchased. This 30 pound gauge was the

only method Watz and Appellant had to measure the air pressure that was being built up in the expansion joint. Appellant testified the gauge indicated about ten pounds of pressure on the first test. On the second test he said the gauge in question did not give any reading at all. After "ten seconds it hadn't aired up." But the first test was not conclusive because the testers, the fitters, realized that the air was leaking out of the joint where the blind flanges had been connected or attached. Hence, the second test was necessary. After receiving further instructions and orders from their foreman, Appellant and Watz tightened the blind flanges at the end of the expansion joint by installing additional bolts and tightening all of the bolts. The record shows that during this period of time between the tests, the gauge had not been dropped, misused, abused nor used in any unusual way. After placing additional bolts, and the further tightening of the blind flanges, the testing resumed. The fitters closely watched and observed the 30 pound Ashcroft gauge as air pressure was pumped into the joint. The gauge did not *measure or indicate any pressure building up.*

Then an explosion occurred which resulted in injuries and damages claimed by Appellant. The gauge—and under this record the jury had the prerogative to believe it was a brand new gauge or a new gauge—had measured and indicated 10 to 15 pounds of air pressure on the earliest test or tests. But on the last test it totally failed to function. It did not measure any pressure. Had it measured pressure between 10 to 15 pounds per square inch, then the fitters would either have reduced or cut off the air supply. Appellant was struck by a piece of metal when the expansion joint exploded. Appellant contended that he sustained injuries to his back, legs, stomach, groin and other parts of his body.

The jury found that the gauge, at the time it was sold by Dresser Industries, Inc., was unfit for the ordinary purposes for which gauges are used and that "unfit condition" was a proximate cause of the occurrence or explosion. These issues found their genesis in *TEX.BUS. & COM. CODE ANN. sec. 2.314(b)(3)* (Vernon 1968). The special issues followed closely 3 State Bar of Texas, *Texas Pattern Jury Charges* PJC 71.07 (1982). Chief Justice Pope, writing for the Supreme Court in *Fleishman v. Guadiano,* 651 S.W.2d 730 (Tex.1983), has written at page 731:

"Instructions in connection with the proper issues about negligence and products liability have been rather fully developed. They have been collected for the benefit of the bench and bar in the *Texas Pattern Jury Charges.* The trial judge in this instance kept his eye upon the relevant inquiry...."

*TEX.BUS. & COM.CODE ANN. sec. 2.314(a), (b)(3)* (Vernon 1968) reads, in part:
"Sec. 2.314. Implied Warranty: Merchantability; Usage of Trade

"(a) Unless excluded or modified (Section 2.316), a warranty that the goods shall be merchantable is implied in a contract for their sale if the seller is a merchant with respect to goods of that kind....

"(b) Goods to be merchantable must be at least such as

. . . .

"(3) are fit for the ordinary purposes for which such goods are used...."
It is undisputed that Dresser Industries, Inc., is a merchant with respect to pressure gauges. Under this record we find and hold that there is sufficient, if not ample, evidence and testimony of probative force to sustain the jury's findings bottomed on *TEX.BUS. & COM.CODE ANN. sec. 2.314(b)(3).* The warranty of merchantability applies to sales for use as well as sales for resale. The Business & Commerce Code statutorily recognizes and mandates the implied warranty of merchantability. See *TEX.BUS. & COM.CODE ANN. sec. 2.314,* also known as *Texas U.C.C.* (Vernon 1968). In *Garcia v. Texas Instruments, Inc.,* 610 S.W.2d 456 (Tex.1980), the court held unequivocally that a cause of action exists under the Uniform Commercial Code for personal injuries resulting from the

breach of implied warranty of merchantability, citing and quoting in detail from *TEX.BUS. & COM.CODE ANN. sec. 2.314(b)(3)* and *sec. 2.715(b)(2)* providing:

"(b) Consequential damages resulting from the seller's breach include

. . . .

"(2) injury to person or property proximately resulting from any breach of warranty."

We quote from *Garcia v. Texas Instruments, Inc., supra,* at page 462:

"Despite these concerns, the majority of jurisdictions that have considered the question have recognized the existence of a cause of action for personal injuries under the Code for breach of implied warranty. Conceptual difficulties inherent in the application of the Code to personal injury claims have been resolved on a case by case basis. *See Morton v. Texas Welding & Mfg. Co.,* 408 F.Supp. 7, 11 (S.D.Tex.1976) (cause of action for personal injuries caused by warranty breach accrues at the time of injury, not time of delivery); *Simmons v. Clemco Indus.,* 368 So.2d 509, 515 (Ala. 1979) (notice requirements of sec. 2–607 are not applicable to non-purchaser suffering personal injuries resulting from breach of warranty). *See also,* Comment, *Consumer Claims for Personal Injuries Under Texas UCC Implied Warranties-Defenses,* 16 Hous.L.Rev. 165 (1978).

"We disagree with the conclusion of the Court of Civil Appeals that the Code merely 'purports' to allow a buyer to recover from a seller damages for personal injuries proximately resulting from the seller's breach of warranty. [*Garcia v. Texas Instruments,*] 598 S.W.2d [24] at 24 [Tex.Civ.App. (1980)]. To the contrary, the Code establishes an alternative remedy to strict liability in tort with respect to injuries suffered from a defective product. Recognition of this statutory cause of action is mandated by the express provisions of the Code. Section 2.715(b)(2) states:

"Sec. 2.715. Buyer's Incidental and Consequential Damages

. . . .

"(b) Consequential damages resulting from the seller's breach include

. . . .

"(2) *injury to person or property proximately resulting from any breach of warranty.*
"Section 2.719(c) provides:
"Sec. 2.719. Contractual Modification or Limitation of Remedy

. . . .

(c) Consequential damages may be limited or excluded unless the limitation or exclusion is unconscionable. *Limitation of consequential damages for injury to the person in the case of consumer goods is prima facie unconscionable but limitation of damages where the loss is commercial is not.*" (Emphasis theirs)

It is interesting to note that the Court, in *Garcia, supra,* cited, with approval, *Berry v. G.D. Searle & Co.,* 56 Ill.2d 548, 309 N.E.2d 550 (1974), quoting as follows:

" '. . . clearly demonstrate the legislative intent to create a statutory cause of action for breach of implied warranty to afford consumer protection to those who sustain personal injuries resulting from product deficiencies. This remedy is distinct and in addition to that existing in strict tort liability

. . . .

" '*Id.,* 309 N.E.2d at 553. We are in accord. . . .' "

It is significant that our Supreme Court placed its approving imprimatur on the wording "afford consumer protection to those who sustain personal injuries resulting from product deficiencies." Clearly, this Ashcroft 30 pound air pressure gauge was deficient. *See also Signal Oil and Gas v. Universal Oil Products,* 572 S.W.2d 320 (Tex.1978). In *Signal Oil and Gas, supra,* the Court recognized that damages to properties other than the product itself, in addition to the damages to the product, are recoverable under Section 402A of the Restatement (Second) of Torts and *TEX.*

*BUS. & COM.CODE ANN.* as consequential damages for a breach of an implied warranty.

■ The evidence tended to show that teflon tape was properly applied before testing. There were no obstructions which prevented the gauge from properly functioning. There is direct, abundant evidence in the record which glaringly demonstrates that the gauge malfunctioned at the time the expansion joint exploded. The fitters and the eye witnesses to the accident, by their testimony, created a fact question for the jury that the pressure gauge had been properly used and properly handled by the fitters. Further, the evidence, under all the facts in this case tended to show that the gauge was in the same condition as it was when it left the possession of Dresser. These were fact issues found against Dresser by the jury. Circumstantial evidence is adequate to show that a product was defective at the time it was sold or left the possession of the manufacturer. *See Darryl v. Ford Motor Company*, 440 S.W.2d 630 (Tex.1969).

■ The gravamen or main thrust of *TEX.BUS. & COM.CODE ANN.* sec. *2.314(a), (b), (c)* (Vernon 1968), being an implied warranty of merchantability, is the fitness for the ordinary purposes for which such goods are used. Stating it more precisely, the goods—in this case, an Ashcroft 30 pound gauge—are to be fit for the ordinary purposes for which such goods are used, being testing for pressure in this case. We hold that it is not necessary to show a defect or defective good or product but, rather, following the exact language of the statute, that the good or goods must be "fit for the ordinary purposes for which such goods are used...." Nevertheless, by circumstantial evidence as well as by direct, deducible, reasonable inference, the gauge was defective and deficient.

■ In reviewing and analyzing the "no evidence" points, this Court must consider only the evidence and the reasonable inferences that can be drawn therefrom, in their most favorable light, to support the jury's findings while disregarding all unfavorable evidence and the inferences from the unfavorable evidence. *Turnbough v. United Pacific Ins. Co.*, 666 S.W.2d 489 (Tex.1984); *Dolenz v. Continental Nat. Bank of Fort Worth*, 620 S.W.2d 572 (Tex.1981); *Biggs v. United States Fire Ins. Co.*, 611 S.W.2d 624 (Tex.1981). We have applied that criteria to the liability issues involved in an implied warranty of fitness and hold that the evidence was legally sufficient. But Dresser says that there was insufficient factual evidence to support the jury's findings on the breach of implied merchantability and that the answers of the jury are against the great weight and preponderance of the evidence.

Probably the most cited authority on these points is an article written by Chief Justice Robert W. Calvert entitled " 'No Evidence' and 'Insufficient Evidence' Points of Error", *38 Texas L.Rev. 361* (1960). We quote from page 366:

" 'Insufficient evidence' points may, and should, be sustained when the record discloses either of the following situations: (a) the evidence is factually insufficient to support a finding of a vital fact, or (b) the finding of a vital fact is so contrary to the great weight and preponderance of the evidence as to be clearly wrong."

Certainly the finding of the vital facts by the jury on the unfitness and lack of merchantability, under this record, is not clearly wrong.

■ On the lack of factually sufficient evidence, Chief Justice Calvert writes further at page 367:

"If the only evidence relevant to a particular issue is that offered to prove the existence of a vital fact—a situation which will be rare indeed—a Court of Civil Appeals will, and can, consider only the evidence which supports the finding of the fact. In that situation the Court should sustain the point if the evidence supporting the finding is so uncertain, inconsistent, improbable, or unbelievable that, although constituting some evidence of probative force when considered in its most favorable light in support of

the finding, it would nevertheless be clearly unjust to permit the judgment to stand...."

From a review of the whole record before us, we cannot find and hold that the evidence supporting the jury's findings on a breach of an implied warranty of fitness and suitability is so uncertain, inconsistent, improbable or unbelievable that it would be clearly unjust to permit the judgment to stand. We do not find that the evidence is uncertain, inconsistent, improbable or unbelievable. On the contrary, we find the evidence on these points to be certain, consistent, probable, believable, clear, harmonious; indeed, it is *not* contradicted in any meaningful way.

Quoting further from Chief Justice Calvert, at page 367:

"If there is evidence of probative force tending to prove the existence of a vital fact and evidence tending to disprove its existence and the point of error is that the finding is against the great weight and preponderance of the evidence, the rule by which a Court of Civil Appeals should be guided in passing on the point is simple even if the conclusion to be reached in a particular case is difficult...."

Here, we have reached our conclusion without difficulty. We certainly agree that, in some cases, our duty "in passing on the point is simple even if the conclusion to be reached in a particular case is difficult." This is not so in this case.

We find, under this record, that the trial judge was correct in refusing two requested jury instructions which were dogmatic in effect that the jury could not consider or award any money for the hernia or the surgery to repair the hernia, or the cartilage injury to Appellant's knee. The evidence disallowed these instructions.

We perceive that the points written on above are dispositive of the question of the liability of the Appellee. We proceed to enter the judgment that should have been entered below and we reinstate the trial court judgment of October 19, 1983, (later set aside by the trial court) and decide and

decree that Billy W. Bernard do have and recover of and from Dresser Industries, Inc., the sum of $155,828.55 plus interest at the rate of 10% per annum from and after October 19, 1983. Another defendant settled, but *see Cypress Creek Utility Service Co. v. Muller,* 640 S.W.2d 860 (Tex.1982).

The 10% interest rate per annum shall not apply and shall not be computed for any extension of time to file a brief in behalf of Billy W. Bernard. *TEX.REV. CIV.STAT.ANN. 5069–1.05, sec. 3(c)* (Vernon 1985 Pamph.Supp.)

The trial court erred in granting the motion for judgment notwithstanding the verdict.

REVERSED AND RENDERED.