## MASSACHUSETTS INDEMNITY AND LIFE INSURANCE CO., Appellant,

### v.

## Barbara MORRISON, Individually, and as Independent Executrix of the Estate of Michael Wayne Morrison, Appellee.

No. 09 87 054 CV.

Court of Appeals of Texas,
Beaumont.

Jan. 28, 1988.

As Corrected Feb. 3, 1988.

Rehearing Denied Feb. 17, 1988.

Eric D. Nielsen, Gilpin, Maynard, Parsons, Pohl & Bennett, Houston, for appellant.

Terry Doyle, Port Arthur, for appellee.

## OPINION

BURGESS, Justice.

In 1984, Michael Morrison died when his car veered off the road and hit a tree. A handwritten note was found at the scene which appeared to be a suicide note. Primarily because of the note, the investigating officers concluded the collision was a suicide and ceased their investigation.

Whether Morrison died by his own hand became an issue because nine months before his death Morrison bought a life insurance policy from appellant, which provided that appellant was not obligated to pay proceeds if the insured committed suicide within two years of issuance. Appellee,

Morrison's wife and beneficiary, brought suit against the insurance company when it denied appellee's claim under the policy on the ground that Morrison had committed suicide. Only one special issue was presented to the jury: "Do you find from a preponderance of the evidence that Michael Wayne Morrison committed suicide?" The jury answered, "We do not."

Appellant challenges the jury's answer, arguing on appeal that the evidence establishes suicide as a matter of law and alternatively that the jury's finding is against the great weight and preponderance of the evidence.

We begin by acknowledging that there is a legal presumption against suicide. *Combined Am. Ins. Co. v. Blanton*, 163 Tex. 225, 353 S.W.2d 847, 848 (1962). Appellant has met its burden of producing evidence of suicide to rebut the presumption, however. *Smith v. Tennessee Life Ins. Co.*, 618 S.W.2d 829, 833 (Tex.Civ.App.—Houston [1st Dist.] 1981, no writ). Once rebutted, the presumption is not evidence and is not to be weighed or treated as evidence. *Blanton*, 353 S.W.2d at 849; *Prudential Ins. Co. of Am. v. Krayer*, 366 S.W.2d 779, 780 (Tex.1963). Suicide was a defense to the contract for insurance, though, so presumption notwithstanding, the burden of proof was upon the insurance company to satisfy the jury that the deceased committed suicide. *Texas Life Ins. Co. v. Jordan*, 253 S.W.2d 906, 908 (Tex.Civ.App.—Fort Worth 1952, writ ref'd).

When inquiring whether evidence establishes suicide as a matter of law, a court of appeals must determine whether the evidence, viewed most favorably in support of the jury's verdict, amounts to more than a scintilla of evidence to support the verdict. *Langlotz v. Citizens Fidelity Ins. Co.*, 505 S.W.2d 249, 250 (Tex.1974). Because the evidence in this case was circumstantial, we may overturn the jury's verdict only if reasonable minds could not differ as to the inferences to be drawn from the circumstantial evidence. *Krayer*, 366 S.W.2d at 780. Therefore, we inquire whether there is some evidence to raise the inference of

homicide or accident, the only other possible hypotheses. *Id.*

Around midnight on November 15, 1984, Michael Morrison's car veered off the road and ran head-on into a tree. A passerby discovered the car and reported its location at 9:45 the next morning. When a patrolman arrived at the scene, there were some twenty to thirty people milling around. The area was not secured until sometime after Texas Department of Public Safety troopers arrived at 10:08 a.m..

After the car had been removed from the scene, a trooper found a note and a pair of shoes and socks on the ground by the tree, covered with a passenger mat from a car. The deceased was not wearing shoes or socks and a passenger mat was missing from his car. The note was handwritten on a worn application for certificate of title, and read as follows:

I'll always love you Babs. I have mistakes in my life and can't face them like I should. Always I helped other people and it cost me my life. Sorry! Mike Tell Mom I love her. I wish you could have had a better life with me. I wish I could see you one last time, but that would just make ... Never let any take advantage of you. Sell everything and move out of Texas. [Sic.]

Appellant produced evidence at trial to show that Morrison was depressed at the time he died and was having marital, legal, and health problems. Morrison's sister testified he believed his wife had been unfaithful to him and this belief had depressed him for some time. Morrison may have committed some dishonest acts at work shortly before his death and may have feared being caught. The autopsy showed Morrison had severe pneumonia in both lungs. His sister testified she urged him to see a doctor, but he refused. She testified that when she asked him "what was so important that he was going to sit there and let himself die over," he responded, " 'Debbie, I would be better off dead.' "

Appellant's hypothesis is that, despondent, Morrison decided to take his own life. He pulled to the side of a dark and desolate road, walked through the brush to a tree

and tucked his shoes, socks and a note under a passenger mat to protect them from fire in the event his car should explode on impact. Appellant speculates Morrison placed the shoes and socks with the mat in order to alert whoever found him barefoot to look for his shoes and socks; when they found them, they would find his note. He then went back to his car and, using the telephone pole as a guide, purposely drove the car into the tree. The jury was not bound to accept this hypothesis, however, and the evidence, viewed in the light most favorable to the appellee, does cast doubt upon it.

The jurors could certainly have been disinclined to believe that Morrison, or anyone, would purposely kill himself in the manner hypothesized by appellant. They may have found it unlikely that Morrison would choose to hit a tree that was half hidden behind shoulder high brush, when there were more visible obstacles in the area, including a bridge abutment and a telephone pole, any one of which would have been sufficient for the purpose and easier to reach. The jury might have also found it incredible that a non-professional driver could drive with the skill required to hit the tree on purpose. Morrison would have had to guide his car across gravel and grass, through a depression, then forty feet through tall, thick underbrush before hitting the tree. At the sixty to seventy miles per hour Morrison was traveling, approximately one and a half seconds would have lapsed between the time he left the road and the moment of impact. Morrison's car skidded six feet upon leaving the roadway. Tire tracks show that Morrison made no compensating move after the skid. In order to hit the tree on purpose, then, he would have had to have predicted the skid and made adjustments in his driving path to compensate for the skidding. Two of the investigating officers, who themselves log many hours driving, testified that it would have been difficult even for them to have hit the tree purposely. No evidence was presented to indicate that Morrison had special talents as a driver.

There is some evidence to support an inference that Morrison's death was a homicide. The expert testimony conflicted as to whether the note was in the deceased's handwriting. The jury was free to conclude it was not. *Jones v. Tarrant Utility Co.*, 638 S.W.2d 862, 866 (Tex.1982). Morrison's father, Gene, wrote in a style similar to his son's, and Morrison's sister testified that their father might have written the note. A week after the collision, Morrison's wife and sister reported to the police their suspicion that Gene Morrison had killed his son. Because the police believed the death to be a suicide, however, they had not checked the car for evidence of tampering nor had they checked the car or the note for fingerprints. Though the dense brush surrounding the car would have made it difficult for someone to have placed the items under the car after the collision, the evidence does not show it to be impossible. During the ten hours that passed before the tragedy was reported, there was opportunity for someone to have done so. Admittedly, this circumstantial evidence is weak. It is, however, some evidence from which the jury might have inferred Morrison died by a means other than suicide.

There is also some evidence to support the theory that Morrison's death was an accident. Morrison was evidently quite ill from severe pneumonia. This may have impaired his driving. The alleged suicide note was written on paper that appeared aged and worn. The note was not dated, and no evidence was entered to establish when it was written. The jury was free to believe Morrison wrote the note at a time remote from the collision. Morrison had suffered from depression on and off over the months before his death; the note might have been written during a prior depression and later forgotten. On direct, an officer testified that he found the shoes, socks, note and passenger mat in a place that would have been under the car. However, on cross he could not locate the items in the picture he took of the scene after the car had been removed from the scene but before the items were found. He maintained that the picture was too "bleached out" to see the items. The picture shows

enough detail, however, that the jury could reasonably have concluded that the black passenger mat would have shown against the light foreground had the mat been where the officer originally said it was. Another officer testified that someone could have thrown the note and other items out of the car to get them out of their way while checking to see if Morrison could be saved. This is supported by the fact that the note, shoes, and socks were all dry when the officer found them, despite the dampness of the ground. There is testimony that the grassland was muddy, yet there was no mud or grass on Morrison's shoes or his bare feet to indicate he walked from his car to the tree and back.

After viewing the evidence in the light most favorable to the insured, we are not convinced it proves suicide so conclusively that reasonable minds could not reach any other conclusion. *Langlotz*, 505 S.W.2d at 251.

Alternately, appellant contends that the jury's verdict is so against the great weight and preponderance of the evidence that this court must conclude the jury's verdict was based only upon sympathy for appellee as Morrison's widow. A verdict based only upon passion must be reversed and new trial granted. *Berne v. Keith*, 361 S.W.2d 592, 604 (Tex.Civ.App.—Houston [1st Dist.] 1962, writ ref'd n.r.e.). The record contains sufficient evidence in favor of the verdict for us to conclude it was based on reason rather than passion.

We have reviewed the evidence presented, including the evidence contrary to the verdict, as we are required to do when considering sufficiency of evidence points. *In re King's Estate*, 150 Tex. 662, 244 S.W.2d 660, 661 (1951). Two experts testified the note was in Morrison's handwriting and one testified it was not. If, as finders of fact, the jurors believed the latter expert to be more credible, as was their prerogative, *Jones*, 638 S.W.2d at 866, appellant's case for suicide was significantly weakened. Certainly, the evidence supporting suicide was not of such imposing strength that the judgment was clearly wrong, nor was the evidence in favor of the

jury's verdict so uncertain, inconsistent, improbable or unbelievable that it would be clearly unjust to permit the judgment to stand. *Bernard v. Dresser Indus., Inc.*, 691 S.W.2d 734, 738–39 (Tex.App.—Beaumont 1985, writ ref'd n.r.e.).

Appellant's points of error are overruled. The judgment of the trial court is affirmed.

AFFIRMED.