PLAS–TEX, INC. et al., Petitioners,

v.

U.S. STEEL CORPORATION,
Respondent.

No. C–7728.

Supreme Court of Texas.

April 19, 1989.

Rehearing Denied May 17, 1989.

Roger D. Higgins and Robert A. Michael, Thompson, Coe, Cousins & Irons, Dallas, for petitioner.

Larry Hallman & Joann N. Wilkins, Burford & Ryburn, Judy Norris and Frank Finn, Thompson & Knight, Dallas, for respondent.

COOK, Justice.

This is a breach of implied warranty of merchantability case that was brought by Fiberex, Inc. against U.S. Steel Corporation and Plas–Tex, Inc. The court of appeals reversed the judgment of the trial court and remanded the cause for a new trial after concluding that the evidence was factually insufficient to support jury findings of a breach of warranty and causation against U.S. Steel. 751 S.W.2d 628 (Tex. App.1988). We modify the judgment of the court of appeals and remand the cause to the trial court for a new trial.

Fiberex is a manufacturer of fiberglass swimming pools. During 1980 and 1981 Fiberex purchased polyester resins used in the manufacture of these pools from Plas–Tex, a resin distributor. Most of the resins purchased by Fiberex in 1980 and 1981 were manufactured by U.S. Steel. Beginning in the latter part of 1980 some of the pools manufactured by Fiberex began delaminating.[1] By the spring of 1981 approximately thirty-four pools had delaminated. Fiberex kept no records as to which types of resins were used in the manufacture of the pools that delaminated.

Fiberex then brought suit against U.S. Steel and Plas–Tex, claiming that the resins manufactured by U.S. Steel and sold by Plas–Tex caused the delamination in the swimming pools Fiberex built using these resins. Plas–Tex asserted a cross-claim against U.S. Steel for indemnity. The trial court rendered judgment in favor of Fiberex against U.S. Steel, holding it liable for breach of implied warranty of merchantability and for violations of the Texas Deceptive Trade Practices–Consumer Protection Act (DTPA), Tex.Bus. & Com.Code Ann. §§ 17.41–.63 (Vernon 1987). With regard to Plas–Tex, the trial court rendered judgment that Fiberex take nothing. The trial court also rendered judgment that U.S.

Steel indemnify Plas–Tex for its attorney's fees.

U.S. Steel appealed and the court of appeals reversed the judgment of the trial court and remanded the entire cause for a new trial. Fiberex and Plas–Tex each filed an application for writ of error. Fiberex contends that the court of appeals erred in requiring proof of a defect in the goods in an implied warranty of merchantability claim and also erred in its factual sufficiency analysis. Plas–Tex contends that the court of appeals erred in reversing its award of indemnity for attorney's fees and in remanding the entire cause for a new trial.

## I.

■ Fiberex argues that the court of appeals erred in holding that goods must be defective before recovery will be allowed under an implied warranty of merchantability theory. Tex.Bus. & Com.Code Ann. § 2.314(b)(3) (Tex.U.C.C.) (Vernon 1968) ("Goods to be merchantable must be at least such as are fit for the ordinary purposes for which such goods are used."). Fiberex contends that it need not show a defect in the goods, but instead it need only show that the goods were not merchantable, *i.e.*, not fit for the ordinary purposes for which the goods are used.

The majority of the courts of appeals that have considered this issue have concluded that proof of a defect is required. *Fitzgerald v. Caterpillar Tractor Co.*, 683 S.W.2d 162, 163–64 (Tex.App.—Fort Worth 1985, writ ref'd n.r.e.); *Ford Motor Co. v. Tidwell*, 563 S.W.2d 831, 835 (Tex.Civ.App. —El Paso 1978, writ ref'd n.r.e.); *see also Clark v. DeLaval Separator Corp.*, 639 F.2d 1320, 1326 (5th Cir. Unit A Mar.1981) (applying Texas law). *But see Bernard v. Dresser Indus.*, 691 S.W.2d 734, 738 (Tex. App.—Beaumont 1985, writ ref'd n.r.e.) (no proof of defect required).[2] The overwhelm-

---

1. Delamination is the separation of layers of fiberglass caused by the failure of the layers of fiberglass to bond together.

2. Fiberex also argues that *Conann Constructors, Inc. v. Muller,* 618 S.W.2d 564 (Tex.Civ.App.— Austin 1981, writ ref'd n.r.e.), supports its position that proof of a defect is not required in an

implied warranty of merchantability case. However, *Conann* is based on implied warranty of fitness for a particular purpose, 618 S.W.2d 566–67; *see* Tex.Bus. & Com.Code Ann. § 2.315 (Tex.U.C.C.) (Vernon 1968), and is thus not applicable to the instant case, *see generally* 1 J. White & R. Summers, *Uniform Commercial*

ing majority of jurisdictions also requires proof of a defect.[3] We likewise hold that proof of a defect is required in an action for breach of implied warranty of merchantability under section 2.314(b)(3).[4]

■ The defect in an implied warranty of merchantability case is not the same as the defect in a strict products liability case. In the context of an implied warranty of merchantability case the word "defect" means a condition of the goods that renders them unfit for the ordinary purposes for which they are used because of a lack of something necessary for adequacy. In the area of strict products liability, however, the word "defect" means a condition of the product that renders it unreasonably dangerous. *See* 3 State Bar of Texas, *Texas Pattern Jury Charges* PJC 71.01 (1982). Practitioners—as well as the courts—should exercise care to see that these terms are used precisely.

■ A plaintiff in an implied warranty of merchantability case has the burden of proving that the goods were defective at the time they left the manufacturer's or seller's possession. He must show that the goods were unfit for the ordinary purposes for which they are used because of a lack of something necessary for adequacy, *i.e.*, because of a defect. A plaintiff does not, however, have to use direct or expert opinion evidence to show that the goods had a defect; he can instead meet his burden by using circumstantial evidence. *See Ford Motor Co. v. Tidwell*, 563 S.W.2d at 835. To make a prima facie showing of a defect based solely on circumstantial evidence, Fiberex must present evidence that it handled and applied the resin properly.[5] Evidence of proper use of the goods together

---

*Code* § 9–10, at 481–82 (3d ed. 1988). In an action based on implied warranty of fitness for a particular purpose, proof of a defect is not required. *See id.* at 482 & n. 3.

3. *See* R. Anderson, *Uniform Commercial Code* § 2–314:56, at 162 & n. 16 (1983); W. Hawkland, *Uniform Commercial Code Series* § 2–314:05, at 143 n. .5 (Supp.1988); *see also* B. Clark & C. Smith, *The Law of Product Warranties* ¶ 5.01[2][a][ii] (1984 & Supp.1987) ("For a product to flunk the merchantability test, it must contain an inherent *defect*.... If the goods contain no inherent defect, there can be no breach of the implied warranty of merchantability under Section 2–314."); W. Powers, *Texas Products Liability Law* § 2.044 (1989) ("To recover for a breach of an implied warranty of merchantability, the buyer *must* also prove that the goods were defective when they were sold."); G. Wallach, *The Law of Sales Under the Uniform Commercial Code* ¶ 11.08[2] (1981) ("[T]he warranty of merchantability has been breached so long as the product failure is caused by some flaw in the goods themselves.").

4. The jury charge used in this cause on the implied warranty of merchantability claim was a pattern jury charge. *See* 3 State Bar of Texas, *Texas Pattern Jury Charges* PJC 71.07 (1982). The holding in this cause will require a change in PJC 71.07. Question one of PJC 71.07 should be amended to read as follows:

QUESTION 1

Was the reactor heater supplied by the ABC Company unfit for the ordinary purposes for which *such heaters are used because of a defect?*

Answer: _____

*"Defect" means a condition of the goods that renders them unfit for the ordinary purposes for which they are used because of a lack of something necessary for adequacy.*

If you have answered Question 1 "Yes," and only in that event, then answer Question 2. With the italicized modifications, question one of PJC 71.07 accurately reflects the court's holding in this cause.

PJC 71.07 is only applicable when the implied warranty of merchantability case is being tried under a section 2.314(b)(3) breach since there are other possible tests for merchantability listed under section 2.314(b)(1)–(2), (4)–(6) of the Texas Business and Commerce Code. For example, goods are not merchantable if they fail to at least: pass without objection in the trade under the contract description, *id.* § 2.314(b)(2); run, within the variations permitted by the agreement, of even kind, quality, and quantity within each unit and among all units involved, *id.* § 2.314(b)(4); be adequately contained, packaged, and labeled as the agreement may require, *id.* § 2.314(b)(5); or conform to the promises or affirmations of fact made on the container or label, if any, *id.* § 2.314(b)(6). If any of these requirements are not met, then the goods will not be merchantable. *Id.* § 2.314(b); *see* W. Powers, *Texas Products Liability Law* § 2.043 (1989).

5. In a case where the plaintiff relies solely on circumstantial evidence to establish a defect, the plaintiff must present evidence of proper use of the goods to make a prima facie showing of the defect. In cases where the plaintiff relies on direct evidence—as opposed to relying solely on circumstantial evidence—to establish a defect, the plaintiff need not present evidence of proper use of the goods.

with a malfunction may be sufficient evidence of a defect.

The only Texas case stating that it is not necessary to show a defect in the goods to recover under a breach of implied warranty of merchantability theory is *Bernard v. Dresser Industries*, 691 S.W.2d 734, 738 (Tex.App.—Beaumont 1985, writ ref'd n.r. e.). Even in *Dresser*, however, the court concluded that circumstantial evidence and reasonable inferences showed that the gauge in question was in fact defective, *id.* at 738, thereby making this statement dictum. The evidence in *Dresser* showed that the gauge was in the same condition as it was when it left the possession of the manufacturer and that the gauge had been properly handled and used. *Id.* at 735–38. There was no evidence that anything else caused the malfunction of the gauge. This made any explanation other than the existence of a defect unlikely. We disapprove *Dresser* to the extent it conflicts with the instant case.[6]

## II.

■ Further, Fiberex argues that the court of appeals erred in applying its factual sufficiency analysis in reviewing the jury findings regarding the presence of a defect in the goods and causation because it failed to detail the evidence and state why the evidence was factually insufficient, as required by this court in *Pool v. Ford Motor Co.*, 715 S.W.2d 629, 635 (Tex.1986). Fiberex contends that the court of appeals

looked only to the evidence contrary to the verdict and substituted its judgment for that of the jury. We disagree.

The court of appeals correctly recognized that in its factual sufficiency review it was to consider all of the evidence in the record, including any evidence contrary to the judgment.[7] 751 S.W.2d at 631 (citing *Burnett v. Motyka*, 610 S.W.2d 735, 736 (Tex. 1980)). The court of appeals then went on to do just that, consider both the evidence supporting and contrary to the judgment. After doing so, the court of appeals concluded that the evidence was factually insufficient to support jury findings regarding the presence of a defect in the goods and causation. 751 S.W.2d at 634, 637. The court of appeals adequately detailed the evidence and stated the reasons why the evidence was factually insufficient, thus satisfying the dictates of this court set forth in *Pool,* 715 S.W.2d at 635.

## III.

■ In its application Plas–Tex complains that the court of appeals erred in reversing the judgment in its favor against U.S. Steel for indemnity for attorney's fees under the DTPA. Plas–Tex contends that it is entitled to indemnity for attorney's fees under section 17.55A of the Texas Business and Commerce Code even though the judgment rendering U.S. Steel liable under the DTPA was reversed by the court of appeals.[8] Deceptive Trade Practices–

---

6. The court of appeals distinguished *Dresser* solely because it involved personal injuries whereas the instant case only involved economic damages. 751 S.W.2d at 632 n. 3. We disagree with this reasoning that two different tests should be used in an implied warranty of merchantability claim depending on whether personal injury or economic loss is involved.

7. In its opinion the court of appeals also said that "an insufficient evidence point requires only consideration of the evidence tending to support a fact...." 751 S.W.2d at 631 n. 2. This statement should be disregarded as it conflicts with previous holdings of this court requiring a review of all evidence, including evidence contrary to the judgment, in a factual sufficiency review. *E.g., Burnett v. Motyka*, 610 S.W.2d 735, 736 (Tex.1980); *In re King's Estate*, 150 Tex. 662, 664–65, 244 S.W.2d 660, 661 (1951).

8. In 1987 section 17.55A was renumbered, without change, as section 17.555 of the Texas Business and Commerce Code. That section reads as follows:

    A person against whom an action has been brought under this subchapter may seek contribution or indemnity from one who, under the statute law or at common law, may have liability for the damaging event of which the consumer complains. A person seeking indemnity as provided by this section may recover all sums that he is required to pay as result of the action, his attorney's fees reasonable in relation to the amount of work performed in maintaining his action for indemnity, and his costs.

    Tex.Bus. & Com.Code Ann. § 17.555 (Vernon 1987).

Consumer Protection Act—Definitions, Relief, Defenses, Legislative Intent, ch. 216, § 7, 1977 Tex.Gen.Laws 600, 604, *repealed by* Act of May 25, 1987, ch. 167, § 5.02(6), 1987 Tex.Gen.Laws 1338, 1361. We disagree.

Section 17.55A was added to the DTPA as part of the 1977 amendments. The section was added in response to *Volkswagen of America, Inc. v. Licht*, 544 S.W.2d 442, 447 (Tex.Civ.App.—El Paso 1976, no writ), in which the court of civil appeals held that the right of indemnity was not available under the DTPA. *See* Debate on Tex.S.B. 664 in Senate Hum. Res. Comm., 65th Leg. 2 (Mar. 14, 1977) (transcript available from Texas Senate Staff Services Office). The statute does not describe the nature of or set the standard for obtaining the statutory rights to contribution and indemnity. *See* W. Dorsaneo & C. Alder, *Contribution and Indemnity*, in 4 *Texas Torts and Remedies* § 102.06[2] (J. Edgar & J. Sales eds. 1989). Considering the circumstances under which the section was added and its lack of guidelines, it appears this section was intended to incorporate existing principles of contribution and indemnity law into DTPA cases. *See id.*

We considered an issue related to the one in the instant case in *Swafford v. View–Caps Water Supply Corp.*, 617 S.W.2d 674 (Tex.1981). In that case the indemnitor, View–Caps, was found to be liable to the plaintiff, but the indemnitees, Swafford and Baker, were absolved of liability. *Id.* at 675. The indemnitees sought attorney's fees under section 17.55A. *Id.* We said:

> The only question before this Court is whether Swafford and Baker are entitled to indemnity from View–Caps for their attorney fees under Section 17.55A of the DTPA. We hold that Swafford and Baker are entitled to recover attorney's fees under the express provisions of the statute.... *The jury found that View–Caps was liable for the event complained of by Purcell.* The statute expressly authorizes indemnity for attorney's fees in this situation.

*Id.* (emphasis added). We specifically noted that the indemnitor was found liable before concluding that recovery was proper. *Id.*

In the instant case, however, the indemnitor, U.S. Steel, has not been found liable for the event complained of by the plaintiff since the trial court's finding of liability was reversed by the court of appeals. There is no right of indemnity against a defendant who is not liable to the plaintiff. *See Hunter v. Fort Worth Capital Corp.*, 620 S.W.2d 547, 553 (Tex.1981); *Brown & Root, Inc. v. Rust Eng'g*, 679 S.W.2d 576, 578 (Tex.App.—Texarkana 1984, writ ref'd n.r.e.). As a result, Plas–Tex's award of indemnity for attorney's fees was properly reversed by the court of appeals.

### IV.

Plas–Tex also argues that the court of appeals erred in remanding Fiberex's claim against Plas–Tex for a new trial. Plas–Tex contends that since Fiberex did not appeal the trial court's judgment that it take nothing, the judgment is final as to that issue and remand is therefore improper. We agree.

Generally, when one party appeals from a judgment, a reversal as to that party will not justify a reversal as to other nonappealing parties. *Turner, Collie & Braden, Inc. v. Brookhollow, Inc.*, 642 S.W.2d 160, 166 (Tex.1982). This rule does not apply, however, when the rights of the appealing and nonappealing parties are so interwoven or dependent on each other as to require a reversal of the entire judgment. *Id.*

Although the underlying conduct of the defendants that gave rise to this action may have been interwoven, the rights of the parties at this point are very distinct. There are three claims involved here: Fiberex's claim against Plas–Tex; Fiberex's claim against U.S. Steel; and Plas–Tex's cross-claim against U.S. Steel for indemnity. Fiberex's claim against Plas–Tex was resolved by a trial court judgment that Fiberex take nothing, which was not appealed; Plas–Tex therefore has no judgment against it and a new trial on this issue would be of no benefit. *See Jackson v. Fontaine's Clinics, Inc.*, 499 S.W.2d 87, 92 (Tex.1973); *see also George v. Vick*, 686

S.W.2d 99, 100 (Tex.1984). Fiberex's claim against U.S. Steel must be tried again for the reasons stated above.

The remaining claim is Plas–Tex's cross-claim against U.S. Steel. Plas–Tex must be made a party to the case on remand for the sole purpose of determining whether it is entitled to indemnity for its attorney's fees. If U.S. Steel is found liable to Fiberex, then Plas–Tex can request to be indemnified for its attorney's fees.

### V.

Accordingly, we reverse that part of the judgment of the court of appeals which remanded Fiberex's claim against Plas–Tex; since there was no appeal of the trial court's judgment that Fiberex take nothing against Plas–Tex, that part of the trial court's judgment is final. In all other respects the judgment of the court of appeals is affirmed. Plas–Tex is a party to the trial on remand solely for the determination of its cross-claim against U.S. Steel for indemnity for attorney's fees.