Roger JOYNER, Appellant,

v.

COMMISSION FOR LAWYER DISCIPLINE, Appellee.

No. 05–01–01781–CV.

Court of Appeals of Texas, Dallas.

March 26, 2003.

Rehearing Overruled May 7, 2003.

Robert D. Wilson, Peter Lesser, Dallas, for Appellant.

Ardita Leonne Vick, Dallas, Linda A. Acevedo, Austin, for Appellee.

Before Justices O'NEILL, FARRIS,[1] and ROSENBERG.[2]

## OPINION

Opinion By Justice BARBARA ROSENBERG (Assigned).

The Commission for Lawyer Discipline brought this disciplinary action against Roger Joyner, alleging violations of multiple provisions of the Texas Disciplinary Rules of Professional Conduct. Following a nonjury trial, the trial court granted a judgment of partially probated suspension against Joyner. On appeal to this Court, Joyner contends in three issues that the judgment of the trial court was not supported by legally and factually sufficient evidence. We affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

Betty Madge Mills was injured on November 5, 1994. In June 1995, she employed Joyner to pursue a negligence claim arising from the injury. Joyner filed the lawsuit on November 6, 1996. Joyner received interrogatories and requests for production regarding the case in January 1997 but did not answer them. Also in January 1997, counsel for one of the defendants, Farmers Electric Co-op, informed Joyner that suit had been filed two years and one day after the injury occurred and, therefore, he would be filing a motion for summary judgment on limitations grounds. Joyner nonsuited Farmers Electric Co-op. In August or September 1997, Joyner associated Lyle Medlock on the case, and Medlock brought in Craig Bonham shortly thereafter. In November 1997, William E. Reid, counsel for three other defendants, sent Joyner a motion for summary judgment on limitations grounds and notice of the hearing on the motion. No response to the motion was filed, and no one appeared on Mills's behalf at the hearing. The trial court granted summary judgment against Mills on December 19, 1997. No postjudgment motions were filed, and no appeal was filed on Mills's behalf.

The Commission alleged a cause of action against Joyner on behalf of Mills.[3]

---

1. The Honorable David F. Farris, Retired Justice, Second District Court of Appeals, Fort Worth, Texas, sitting by assignment.

2. The Honorable Barbara Rosenberg, Former Justice, Court of Appeals, Fifth District of Texas at Dallas, sitting by assignment.

3. The Commission also alleged complaints on behalf of Melvin Hightower and Carlos Galvan. The trial court did not find for the Commission on the matters relating to Hightower and Galvan. Those allegations are not part of this appeal.

The Commission alleged that Mills employed Joyner to represent her in a personal injury matter and that Joyner filed the lawsuit one day after the statute of limitations had run, failed to respond to a motion for summary judgment on limitations grounds, failed to file a motion for new trial or perfect an appeal on Mills's behalf, failed to communicate with Mills about the case, and failed to respond to Mills's requests to return her file. The Commission alleged that Joyner violated several disciplinary rules, including rule 1.01(a) and rule 1.01(b)(1).

The trial court found that Joyner violated rule 1.01 in the matter relating to Mills, and that, as to each violation, Joyner committed professional misconduct as defined in rule 1.06 of the Texas Rules of Disciplinary Procedure. The trial court then imposed sanctions that included a suspension for sixty months, with a two-month active suspension and a five-year probated suspension, subject to various terms and conditions. The court also ordered Joyner to pay $16,316.90 in attorney's fees, expenses, and costs. No findings of fact and conclusions of law were requested or filed. Joyner's motion for new trial was overruled by operation of law. Joyner appealed.

## STANDARD OF REVIEW AND APPLICABLE LAW

In a nonjury trial, when no findings of fact or conclusions of law are filed or requested, it will be implied that the trial court made all the necessary findings to support its judgment. *Holt Atherton Indus., Inc. v. Heine,* 835 S.W.2d 80, 83 (Tex.1992). When, as here, a reporter's record is brought forward, these implied findings may be challenged by factual or legal sufficiency points. *Id.* In reviewing a legal sufficiency question, we must view the evidence in a light that tends to support the finding of the disputed fact and port the finding of the disputed fact and disregard all evidence and inferences to the contrary. *Bradford v. Vento,* 48 S.W.3d 749, 754 (Tex.2001); *Heine,* 835 S.W.2d at 83. If there is more than a scintilla of evidence to support the finding, the no-evidence challenge fails. *Heine,* 835 S.W.2d at 83.

When a party attacks the factual sufficiency of an adverse finding on an issue on which that party did not have the burden of proof, we set aside that finding only if the evidence supporting the finding is so weak as to be clearly wrong and manifestly unjust. *Garza v. Alviar,* 395 S.W.2d 821, 823 (Tex.1965); *see Dow Chem. Co. v. Francis,* 46 S.W.3d 237, 243 (Tex.2001). When reviewing a challenge to the factual sufficiency of the evidence, we examine the entire record, considering both the evidence in favor of, and contrary to, the challenged finding. *Eureste v. Comm'n For Lawyer Discipline,* 76 S.W.3d 184, 195 (Tex.App.-Houston [14th Dist.] 2002, no pet.) (citing *Plas-Tex, Inc. v. U.S. Steel Corp.,* 772 S.W.2d 442, 445 (Tex.1989)). The trier of fact is the sole judge of the weight and credibility of the witnesses' testimony. *Id.* We may not substitute our own judgment for that of the trier of fact, even if a different answer could be reached on the evidence. *Id.* The amount of evidence necessary to affirm a judgment is far less than that necessary to reverse a judgment. *Id.*

Rule 1.01 of the Texas Disciplinary Rules of Professional Conduct provides, in part:

> (a) A lawyer shall not accept or continue employment in a legal matter which the lawyer knows or should know is beyond the lawyer's competence, unless:
>
> > (1) another lawyer who is competent to handle the matter is, with the prior informed consent of the client, associated in the matter; or

(2) the advice or assistance of the lawyer is reasonably required in an emergency and the lawyer limits the advice and assistance to that which is reasonably necessary in the circumstances.

(b) In representing a client, a lawyer shall not:

(1) neglect a legal matter entrusted to the lawyer....

(c) As used in this Rule, "neglect" signifies inattentiveness involving a conscious disregard for the responsibilities owed to a client or clients.

TEX. DISCIPLINARY R. PROF'L CONDUCT 1.01(a), (b)(1), (c), *reprinted in* TEX. GOV'T CODE ANN., tit. 2, subtit. G app. A (Vernon 1998) (TEX. STATE BAR R. art. X, § 9).

## DISCUSSION

■ Regarding rule 1.01(a), the record shows that Mills employed Joyner to pursue a personal injury case against several defendants. Joyner testified that his primary field of practice was criminal law and that he asked Medlock to help him and Medlock brought in Bonham. Mills testified that she discovered other attorneys were working on her case when Bonham called her and told her he was working on the case; she testified that Joyner never asked for her consent to get another attorney to work on her case. Joyner testified that his contract with Mills did not specifically give him Mills's prior consent to associate Medlock on the case and that he associated Medlock on the case and paid him before telling Mills that Medlock would be working on the case. We conclude that the evidence is undisputed that Joyner did not obtain Mills's consent before associating Medlock or Bonham on the case and that the emergency provision does not apply here. Therefore, this is legally and factually sufficient evidence to show that Joyner violated rule 1.01(a).

■ Regarding rule 1.01(b), it is undisputed that Joyner entered into a contract with Mills and remained attorney of record in the case. *See* TEX.R. CIV. P. 8 (providing for "attorney in charge": attorney whose signature first appears on initial pleadings for any party "shall be the attorney in charge, unless another attorney is specifically designated therein," "said attorney in charge shall be responsible for the suit as to such party," and "[a]ll communications from ... other counsel with respect to a suit shall be sent to the attorney in charge"). The record shows that Joyner filed Mills's case one day beyond the limitations period. The record also shows that Joyner received interrogatories and requests for production from Reid on January 28, 1997, a response was due thirty-four days later, Joyner did not request an extension of time to respond, and Joyner did not answer the discovery. Bonham testified that a response to the discovery was filed after he began working on the case. Further, it was undisputed that no one responded to the motion for summary judgment, appeared at the hearing, or filed any postjudgment motions or notice of appeal. This is more than a scintilla of evidence that Joyner neglected Mills's legal matter, thus violating rule 1.01(b)(1).

■ Nevertheless, Joyner argues that the evidence is factually insufficient to support the implied finding that he neglected Mills's legal matter. Joyner argues that he acted in good faith by associating competent counsel after filing the lawsuit and by forwarding documents and papers to them. *See* TEX. DISCIPLINARY R. PROF'L CONDUCT 1.01 cmt.7 (regarding neglect: "A lawyer who acts in good faith is not subject to discipline, under those provisions [of paragraph (b) ] for an isolated inadvertent or unskilled act of omission, tactical error, or error of judgment."). Joyner argues that an assistant in his office, Edward

Spears, forwarded the motion to Medlock and Bonham's office for response and handling.

Spears testified that he received the motion for summary judgment in November 1997 and took it to Medlock's office. The motion included notice of the setting of the hearing. Bonham was asked if the motion was delivered to Medlock, who died in 1998. Bonham testified that he did not know if Medlock received the motion but that Bonham thought that if documents had come into Medlock's office, they would have been given to Bonham, since he was the one "doing the primary work on [the case]." Bonham further testified that it was unlikely that the motion was transferred to Medlock's office. Bonham also testified that the motion was not delivered to him or to his secretary. Thus, the evidence was conflicting regarding whether Joyner, or someone in his office, forwarded the motion for summary judgment to Medlock or Bonham.

Joyner also argues that Reid took advantage of Joyner by failing to provide a copy of the motion for summary judgment and the notice of the hearing directly to Medlock and Bonham. Nevertheless, the evidence is undisputed that Joyner remained lead counsel of record for this case, his office received the motion for summary judgment, and Joyner did not share an office with Medlock or Bonham. *See Palmer v. Cantrell*, 747 S.W.2d 39, 41 (Tex.App.-Houston [1st Dist.] 1988, no writ) (holding that "[w]here a single adverse party is represented by two attorneys who are not associated in a firm, we believe that it is sufficient to serve the attorney who is designated as lead counsel because he has 'control in the management of the cause'" and citing rule of civil procedure 8). Joyner cites no authority to support any argument that Reid's failure to send documents and papers to Medlock

or Bonham, even if Reid knew they were working on the case, relieves Joyner of his responsibility to Mills under rule 1.01(b)(1).

Considering all the evidence, we cannot say that the evidence supporting the judgment as to rule 1.01(b)(1) is so weak as to be clearly wrong and manifestly unjust. Accordingly, we conclude the evidence is factually sufficient to show that Joyner violated rule 1.01(b)(1).

## CONCLUSION

Because we have concluded that the evidence is sufficient to support the trial court's judgment that Joyner violated rule 1.01, we overrule Joyner's three issues and affirm the trial court's judgment.

