NO. 07-02-0122-CV



IN THE COURT OF APPEALS



FOR THE SEVENTH DISTRICT OF TEXAS



AT AMARILLO



PANEL E



FEBRUARY 24, 2003



______________________________




W. L. EPPS, INDEPENDENT EXECUTOR OF THE


ESTATE OF PAUL C. LEDRICK, APPELLANT



V.



NATIONAL BANK OF COMMERCE, APPELLEE



_________________________________



FROM THE 223RD DISTRICT COURT OF GRAY COUNTY;



NO. 30,997; HONORABLE LEE WATERS, JUDGE



_______________________________




Before JOHNSON, C.J. and REAVIS, J. and BOYD, S.J. (1)


MEMORANDUM OPINION (2)


 W. L. Epps, Independent Executor of the Estate of Paul C. Ledrick, (Executor),
challenges a judgment following a trial that National Bank of Commerce recover the sum
of $265,341.39, plus interest and attorney's fees against him in his capacity as
Independent Executor of the Estate of Paul Ledrick, deceased. Presenting four issues, the
Executor argues the trial court erred in (1) finding that the Bank's insufficient knowledge
of John Kenney's actions was a conclusion of law when the issue was really one of a
finding of fact; (2) concluding as a matter of law that there was insufficient evidence to
show that the Bank had knowledge of the misappropriation of funds under the power of
attorney; (3) concluding that there was insufficient evidence to show the Bank had
knowledge of the misappropriation of funds under the power or attorney; and (4) not finding
the Bank liable for aiding John Kenney in misappropriating funds held in trust under the
power of attorney when the evidence shows the Bank had knowledge that John Kenney
was using the funds for his personal benefit and to the detriment of Ledrick. Based upon
the rationale expressed herein, we affirm.

 On October 1, 1990, Paul C. "Mickey" Ledrick, executed a "General Power of
Attorney" by which he appointed John Kenney as his true and lawful attorney-in-fact. 
Ledrick acknowledged the instrument before a notary public and after it was subscribed by
two witnesses, it was recorded in the official records of Gray County. At that time, Kenney
was living on property owned by Ledrick and was "functioning as a caretaker of both the
person and property of Ledrick." The instrument provided that Kenney had the authority
customarily granted in a general power of attorney, including, among other special
provisions:


 (2)(k) To borrow any sum or sums of money on such terms and with such
security, whether real or personal property, as my attorney may think fit, and
for that purpose to execute all promissory notes, bonds, mortgages, deeds
of trust, security agreements, and other instruments which may be necessary
or proper.


In addition, by paragraphs 9 and 11, Ledrick agreed

 9. CONFIRMATION OF ATTORNEYS ACTS. I hereby ratify and confirm
that all that my attorney-in-fact or any successor shall lawfully do or cause
to be done by virtue of this general power of attorney and the rights and
powers granted herein.


 11. INDEMNIFICATION OF THIRD PARTIES. I hereby indemnify and hold
harmless any third party who accepts and acts under this power of attorney
against any and all claims, demands, losses, damages, actions and causes
of action, including expenses, costs and reasonable attorney's fees which
such third party may incur in connection with his reliance on this power of
attorney.



As of October 1, 1990, Ledrick and Kenney had conducted business with the Bank for
several years and Ledrick had maintained certificates of deposit there and Kenney had
farm loans and a checking account. 

 Before Ledrick revoked the power of attorney on March 29, 1998, as material here,
the Bank made six loans to John Kenney, attorney-in-fact for Paul C. Ledrick. By its live
pleading, the Bank sought to recover on the loans against Ledrick as follows:

 a) August 5, 1997, loan no. 902433 in the original principal amount of
$100,000;


 b) October 8, 1996, loan no. 902122 in the original principal amount of
$35,000;


 c) January 16, 1997, loan no. 902434 in the original principal amount of
$23,000;


 d) August 5, 1997, loan no. 903075 in the original principal amount of
$25,000;


 e) January 2, 1998, loan no. 903521 in the original principal amount of
$5,000; and


 f) January 7, 1998, loan no. 186484 in the original principal amount of
$4,439.52.



On May 29, 1998, (3) the Bank filed suit to recover on the notes and foreclose its collateral
against Ledrick and Kenney. By his pleadings, the Executor alleged failure of
consideration and other affirmative defenses or claims not material here; however,
misappropriation of funds is raised for the first time on appeal.

 Following rendition of the judgment that the Bank recover on the notes against the
Executor, in addition to other findings of fact, the trial court made the following findings:


 Ledrick executed the general power of attorney to Kenney.


 


 The power of attorney was prepared by Ledrick's attorney.

 Beginning on August 18, 1992, the Bank commenced making loans
to Kenney, POA for Ledrick, and eventually the six loans set out
above were made to John Kenney, POA for Paul C. Ledrick.


 


 All of the loans were in default and the Bank had given proper notice
to Kenney and Ledrick.
 The Bank was the owner and holder of the six notes. 

 Ledrick revoked the general power of attorney on March 29, 1998.

 As of the date of trial, the total principal and accrued interest on the
notes was $265,341.39.


 

 

Where, as here, these findings are not challenged, this Court is bound by them unless the
contrary is established as a matter of law or there is no evidence to support the findings. 
McGalliard v. Kuhlmann, 722 S.W.2d 694, 696 (Tex. 1986); see also Northwest Park
Homeowners Ass'n, Inc. v. Brundrett, 970 S.W.2d 700, 704 (Tex.App.-Amarillo 1998, pet.
denied).

 

 We will consider the Executor's issues in a logical rather than sequential order. 
Issues two and four are directed at misappropriation of funds; thus, we will consider them
together. By his second issue, the Executor argues the trial court erred in concluding as
a matter of law that there was insufficient evidence to show that the Bank had knowledge
of the misappropriation of the funds under the power of attorney. By his fourth issue, he
contends the trial court erred in not finding the Bank liable for aiding Kenney in
misappropriating funds held in trust under the power of attorney when the evidence
showed that the Bank had knowledge that Kenney was using the funds for his personal
benefit and to the detriment of Ledrick. 

 In reply to these issues, the Bank contends that because the affirmative defense
of misappropriation was not alleged in the trial court it is waived. We agree. The office of
pleadings is to define issues at trial. Murray v. O & A Express, Inc., 630 S.W.2d 633, 636
(Tex. 1982). Also, in Sandridge v. Merritt, 581 S.W.2d 247, 249 (Tex.Civ.App.--Amarillo
1979, no writ), we held that defensive theories not presented in the trial court may not be
raised as a new theory for the first time on appeal. See Scurlock Permian Corp. v. Brazos
County, 869 S.W.2d 478,483 (Tex.App.-Houston [1st Dist.] 1993, writ denied). Issues not
raised in the trial court may not be raised for the first time on appeal. See City of San
Antonio v. Schautteet, 706 S.W.2d 103, 104 (Tex. 1986). 

 Moreover, by paragraph 9 of the power of attorney, Ledrick ratified all acts of the
attorney and then by paragraph 11, Ledrick agreed to indemnify and hold the Bank, a third
party, harmless against any claim or demand arising in connection with its reliance on the
power of attorney. Accordingly, even assuming that Kenney commingled loan proceeds,
because of Ledrick's ratification and indemnification and, where, as here, as between two
innocent parties, the loss should be placed on the party that mistakenly created the
situation and was in the best position to have avoided it. Because the Bank's loans were
extended in reliance on the power of attorney which Ledrick executed, the Executor's
second and fourth issues are overruled. Holden Business Etc. v. Columbia Med. Etc., 83
S.W.3d 274, 278 (Tex.App.--Fort Worth 2002, no pet.). 

 By his first issue, the Executor argues the trial court erred in finding that the Bank's
insufficient knowledge of Kenney's actions was a conclusion of law when the issue was
really one of a finding of fact. Then, by his third issue, he argues the trial court erred in
concluding that there was insufficient evidence to show the Bank had knowledge of
misappropriation of funds under the power of attorney. Because these two issues also
concern misappropriation of funds, our disposition of the second and fourth issues
pretermits our consideration of these two issues.

 Although the Executor alleged fraud and failure of consideration in the trial court, 
on appeal he does not challenge the findings of fact or the failure of the trial court to make
findings regarding his fraud or failure of consideration defenses. Also, he does not contend
that the promissory notes were not signed, that the Bank was not the holder and owner of
the notes, nor that they remained unpaid. Because the signatures on the promissory notes
were established, production of the instruments entitled the Bank to recover thereon in the
the absence of defenses being established by the Executor. See Tex. Bus. & Com. Code
Ann. § 3.307(b) (Vernon 2002); Sharp v. Brock, 626 S.W.2d 166, 169 (Tex.Civ.App.--Fort
Worth 1981, no writ). Issues one and three are overruled.

 Accordingly, the judgment of the trial court is affirmed.


 Don H. Reavis

 Justice

 





 
1. John T. Boyd, Chief Justice (Ret.), Seventh Court of Appeals, sitting by assignment.
2. Tex. R. App. P. 47.1.
3. Ledrick died on January 14, 2000, and the Executor was substituted at the time of
trial. After a judgment against Kenney was signed, that judgment was severed into another
proceeding and the case against the Executor proceeded to trial.



ont-family: Arial" STYLE="font-size: 11pt">See Holley v. Adams, 544
S.W.2d 367, 370 (Tex. 1976). (Emphasis in original). 

 Termination of parental rights is of such weight and gravity; thus, due process requires
the petitioner to justify termination by clear and convincing evidence. Tex. Fam. Code Ann.
§ 161.001 (Vernon Pamph. Supp. 2002); In Interest of G.M., 596 S.W.2d at 847. This
standard is defined as that measure or degree of proof which will produce in the mind of the
trier of fact a firm belief or conviction as to the truth or the allegations sought to be
established. In Interest of G.M., 596 S.W.2d at 847. Although the clear and convincing
burden of proof required at the trial level is well settled, appellate courts have struggled to
reconcile this burden of proof with the standard for appellate review of the sufficiency of
evidence. As this Court has previously noted, the clear and convincing standard does not
alter the rules generally applicable when appellate courts review factual findings. In Interest
of R.D.S., 902 S.W.2d 714, 716 (Tex.App.--Amarillo 1995, no writ). Further, as the trier of
fact, it was the function of the jury to weigh the evidence, draw inferences from the facts, and
choose between conflicting inferences. Ramo, Inc. v. English, 500 S.W.2d 461, 467 (Tex.
1973). In reviewing a challenge to the factual sufficiency of the evidence, we must consider,
weigh, and examine all of the evidence of record. Plas-Tex, Inc. v. U.S. Steel Corp., 772
S.W.2d 442, 445 (Tex. 1989). An appellate court should only set aside a finding if the
evidence which supports the finding is so weak as to be clearly wrong and manifestly unjust. 
Cain v. Bain, 709 S.W.2d 175, 176 (Tex. 1986). 

 By her second issue, Parson contends the evidence was insufficient to support a
finding that termination of the parent-child relationship was in the best interest of the children. 
We disagree. Although the term "best interest of the child" is not defined in section161.001,
in connection with that question, the trial court instructed the jury that among other factors,
they could consider (1) the desire of the children; (2) the emotional and physical needs of the
children now and in the future; (3) the emotional and physical danger to the children now and
in the future; (4) the parenting ability of the individuals seeking custody; (5) the programs
available to assist those individuals to promote the best interest of the children; (6) the plans
for the children of those individuals or by the agency seeking custody; (7) the stability of the
home or proposed placement; (8) the acts or omissions of the parent that may indicate that
the existing parent-child relationship is not a proper one; and (9) any excuse for the acts or
omissions of the parent. See Holley, 544 S.W.2d at 371-72. Questions that inquire about
a parent's actions, omissions, or conduct are generally demonstrated by direct or objective
evidence. Although a determination of the "best interest" may also be based on direct or
objective evidence, i.e., physical abuse, beatings, starvation, and the like, the "best interest"
factors are not always subject to being shown by direct evidence. Instead, a "best interest"
determination may also be based on circumstantial evidence, subjective factors, and the
totality of the evidence as a whole. In Interest of S.H.A., 728 S.W.2d 73, 86
(Tex.App.-Dallas 1987, writ ref'd n.r.e.).

 By her argument, Parson focuses on the absence of psychological or medical
testimony directed to the "best interest" question. However, she overlooks her addiction to
cocaine and that she acknowledged leaving the children home alone on numerous occasions. 
She testified that she used drugs in the home and on occasion, left the children with persons
whom she knew used drugs. Further, she testified that she had failed to keep the children's
immunizations current, and by her fact statement, she acknowledged that the Department
validated several allegations of parental neglect against her. Considering the record as a
whole, we conclude the evidence which supports the jury finding is not so weak as to be
clearly wrong and manifestly unjust, and is sufficient to support a finding that termination of
the parent-child relationship between Parson and her children, D.P. and T.P., is in the best
interest of the children. Issue two is overruled. 

 By her third and fourth issues, Parson challenges the factual sufficiency of the
evidence to support the jury's finding that she knowingly placed or allowed the children to
remain in conditions or surroundings which endangered their physical or emotional well-being,
or to support a finding that she engaged in conduct or knowingly placed the children with
persons who engaged in conduct which endangered their physical or emotional well-being. 
However, because Parson does not challenge the sufficiency of the evidence to establish the
remaining two grounds submitted in the charge, i.e., constructive abandonment of the children
or her failure to comply with the provisions of a court order that specifically established the
actions necessary for her to obtain the return of her children, see §161.001 (1)(N) or (O), the
jury's answer to the broad form question submitted without objection will be upheld if any of
the grounds for termination support it. In Interest of D.L.N., 958 S.W.2d 934, 937 (Tex.App.--Waco 1997, pet. denied). Having overruled issue two on the basis that termination of the
parent-child relationship was in the best interest of the children, our consideration of issues
three and four is pretermitted. 

 Accordingly, the judgment of the trial court is affirmed.

 Don H. Reavis

 Justice


Do not publish.


1. By supplemental brief, Parson elaborates on her arguments in support of issues one
and three.