In The
Court of Appeals
Sixth Appellate District of Texas at Texarkana

______________________________

No. 06-04-00136-CR
______________________________


CHARLENE RENEE BACON, Appellant
Â 
V.
Â 
THE STATE OF TEXAS, Appellee


Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â 

On Appeal from the 124th Judicial District Court
Gregg County, Texas
Trial Court No. 31611-B


Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â 



Before Morriss, C.J., Ross and Carter, JJ.
Memorandum Opinion by Justice Ross


MEMORANDUM OPINION

Â Â Â Â Â Â Â Â Â Â Appellant, Charlene Renee Bacon, has filed a motion asking this Court to dismiss
the appeal. Pursuant to Tex. R. App. P. 42.2, the motion is granted.
Â Â Â Â Â Â Â Â Â Â Accordingly, we dismiss the appeal.
Â 
Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Donald R. Ross
Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Justice

Date Submitted:Â Â Â Â Â Â October 25, 2004
Date Decided:Â Â Â Â Â Â Â Â Â October 26, 2004

Do Not Publish



 Priority="64" SemiHidden="false"
 UnhideWhenUsed="false" Name="Medium Shading 2"/>
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 












 
 
 
 
 
 
 




Â 

Â 

Â 

Â 

Â 

Â 

Â 

Â 

Â 

 In
The

   Court
of Appeals

Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â  Sixth
Appellate District of Texas at Texarkana

Â 

Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â  ______________________________

Â 

Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â  No. 06-10-00014-CV

Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â  ______________________________

Â 

Â 

Â 

Â Â Â Â Â Â Â Â Â  IN THE ESTATE OF DAVID
CHARLES LANDERS, DECEASED

Â 

Â 

Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â 


Â 

Â 

Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â  On Appeal from the County
Court at Law

Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â  Cass County, Texas

Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â  Trial Court No. CCL-09-P-0019

Â 

Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â 
Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â 

Â 

Â 

Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â  Before Morriss, C.J.,
Carter and Moseley, JJ.

Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â  Memorandum Opinion by Justice Carter








Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â  MEMORANDUMÂ 
OPINION

Â 

Â Â Â Â Â Â Â Â Â Â Â  The
May 22, 2003, will of David Charles Landers stated Â[a]t the time of the
execution of this Will, I am not married and I have two children . . . . I also
have a very close relationship with Frances Dale Lyles.ÂÂ  Landers and Lyles were ceremonially married
on August 23, 2003, after the will was executed.Â  The trial court found that Landers was
married by common law to Lyles as of July 12, 1993.[1] Â The will was construed based on the finding
that a common-law marriage existed and, therefore, the property acquired during
the marriage was community property.Â  LandersÂ
son, David Landers,[2]
and daughter, Lisa McRorey, appeal this finding, arguing that the evidence was
insufficient to support the finding of a common-law marriage.Â  Because we find the evidence legally and
factually sufficient, we affirm the courtÂs judgment. 

I.Â Â Â Â Â Â Â Â Â  Standard of Review

Â Â Â Â Â Â Â Â Â Â Â  In
conducting this legal sufficiency review, we view the evidence in a light most
favorable to the judgeÂs fact finding, and will indulge every reasonable
inference that supports it to determine Âwhether the evidence at trial would
enable [a] reasonable and fair-minded [judge] to reach the [finding] under
review.ÂÂ  City of Keller v. Wilson, 168 S.W.3d 802, 822, 827 (Tex. 2005); Walker & Assoc. Surveying, Inc. v.
Austin, 301 S.W.3d 909, 916 n.4 (Tex. App.ÂÂTexarkana 2009, no pet.). Â We credit favorable evidence if a reasonable
trial judge could, and disregard contrary evidence unless a reasonable judge
could not.Â  Wilson, 168 S.W.3d at 822, 827; Austin,
301 S.W.3d at 916 n.4. 

Â Â Â Â Â Â Â Â Â Â Â  In
contrast, when conducting a factual sufficiency review, we consider all the
evidence in the record, both supporting and conflicting, and will set aside the
verdict only if it is so contrary to the overwhelming weight and preponderance
of the evidence that it is clearly wrong and manifestly unjust.Â  Plas-Tex,
Inc. v. U.S. Steel Corp., 772 S.W.2d 442, 445 (Tex. 1989); Walker, 301 S.W.3d at 916 n.4 (citing Pool v. Ford Motor Co., 715 S.W.2d 629,
635 (Tex. 1986)).Â  In an appeal from a
bench trial, we do not invade the fact-finding role of the trial court, which
alone determines the credibility of the witnesses, the weight to give their
testimony, and whether to accept or reject all or any part of that testimony if
the evidence falls within the zone of reasonable disagreement.Â  Nordstrom
v. Nordstrom, 965 S.W.2d 575, 580Â81 (Tex. App.ÂÂHouston [1st Dist.] 1997,
pet. denied).

II.Â Â Â Â Â Â Â  Establishing Common-Law
Marriage

Â Â Â Â Â Â Â Â Â Â Â  The existence of a
common-law marriage is a question of fact that the proponent of the marriage
has the burden to prove through direct or circumstantial evidence.Â  Lewis
v. Anderson, 173 S.W.3d 556, 559 (Tex. App.ÂÂDallas 2005, pet. denied)
(citing Russell v. Russell, 865
S.W.2d 929, 933 (Tex. 1993)).Â  In Texas,
common-law marriage exists where Âthe man and woman agreed to be married and
after the agreement they lived together in this state as husband and wife and
there represented to others that they were married.ÂÂ  Tex.
Fam. Code Ann. Â§ 2.401(a)(2).Â  In
this case, Lyles had to prove: Â (1) there
was an agreement between her and Landers to be married; (2) they cohabitated in
Texas as husband and wife; and (3) represented to others that they were
married.Â  Russell, 865 S.W.2d at 932. Â Additionally, because the date of the common-law
marriage is critical to the property division in this case (and the finding
made by the court), there must be sufficient evidence to show that the
relationship was established as of July 12, 1993.Â  See
Winfield v. Renfro, 821 S.W.2d 640, 646Â48 (Tex. App.ÂÂHouston [1st Dist.]
1991, writ denied) (ÂA common law marriage does not exist until the concurrence
of all three elements.Â).

III.Â Â Â Â Â Â  Sufficient Evidence
Established LandersÂ Common-Law Marriage to Lyles

Â Â Â Â Â Â Â Â Â Â Â  A.Â Â Â Â Â Â Â  Agreement
to be Married

Â Â Â Â Â Â Â Â Â Â Â  To establish an
agreement to be married, Âthe evidence must show the parties intended to have a
present, immediate, and permanent marital relationship and that they did in
fact agree to be husband and wife.ÂÂ  Eris v. Phares, 39 S.W.3d 708, 714 (Tex.
App.ÂÂHouston [1st Dist.] 2001, pet. denied).Â 
The testimony of one of the parties to the marriage constitutes direct
evidence that the parties agreed to be married.Â 
Id.Â  

Â Â Â Â Â Â Â Â Â Â Â  Lyles
and Landers both owned separate homes prior to 1993, the year in which they
met.Â  Lyles testified that she agreed
with Landers to be informally married prior to their cohabitation on JulyÂ 12,
1993, and that they celebrated this date as their marriage anniversary each
year.Â  LylesÂ testimony was direct evidence
of an agreement to be married as of July 12, 1993.Â  See id.;
In re Estate of Giessel, 734 S.W.2d 27, 32 (Tex. App.ÂÂHouston [1st
Dist.] 1987, writ refÂd n.r.e.).[3]Â Â  

Â Â Â Â Â Â Â Â Â Â Â  Conduct
of the parties, evidence of cohabitation, and representations to others may
constitute additional circumstantial evidence of an agreement, depending on the
facts of the case. See Russell, 865
S.W.2d at 933; Eris, 39 S.W.3d at
714.Â  Thus, even if evidence of an
express agreement to marry was not offered, the trial judge could treat the
facts discussed in the remainder of the opinion as circumstantial evidence of
the agreement in order to find a tacit agreement to be married.Â  Russell,
865 S.W.2d at 932.Â  

Â Â Â Â Â Â Â Â Â Â Â  B.Â Â Â Â Â Â Â  Cohabitation


Â Â Â Â Â Â Â Â Â Â Â  Lyles
claimed Landers decided to enter into a ceremonial marriage Â[b]ecause we had
been together for ten years and he didnÂt want me left by myself without
anything and I didnÂt want him left by his self without anything.ÂÂ  In addition, Lyles stated that she lived with
Landers from 1993 until his death.Â 
LandersÂ attorney, James Hurst, testified that he met the parties on
November 4, 2002, and Âverified that a common law marriage had occurred, at
least that date or before.Â[4]
Â He noted that the couple Âhad been
living together for a long time.Â Â McRorey
testified that Landers informed her that he was living with Lyles prior to the
ceremonial marriage, and a 1999 letter addressed to Lyles was sent to the
address of the home the couple shared. 

Â Â Â Â Â Â Â Â Â Â Â  C.Â Â Â Â Â Â Â  Holding
Out 

Â Â Â Â Â Â Â Â Â Â Â  The statutory requirement of Ârepresented
to othersÂ is synonymous with the judicial requirement of Âholding out to the
public,Â and may be established by conduct and actions of the parties.Â  Winfield,
821 S.W.2d at 648 (spoken words are not necessary to establish representation
as husband and wife).Â  

Â Â Â Â Â Â Â Â Â Â Â  Lyles
stated she and Landers represented to the public that they were married by
calling each other husband and wife as of 1993.Â 
ÂEveryone knew that we were together and had been together.Â  We lived together.Â  We shared everything.Â  We paid bills together.Â  We both worked together.ÂÂ  A 2001 warranty deed, filed prior to the
partiesÂ ceremonial marriage in 2003 listed Landers as Âa married person.ÂÂ  Hurst also noted that Landers held himself
out as married during his 2002 meeting with the couple.Â  

Â Â Â Â Â Â Â Â Â Â Â  D.Â Â Â Â Â Â Â  Contrary
Evidence

Â Â Â Â Â Â Â Â Â Â Â  David
and McRorey argue that Landers and Lyles could not have entered into an
agreement to be married, and did not represent to others that they were
married, because they were not
informed of the marriage relationship.Â 
Due to hard feelings developed from LandersÂ divorce from DavidÂs mother,
David was estranged from Landers from 1988 until 2000 or 2001.Â  He first learned of Lyles in 2003, and
claimed that his father only told him they were married at that time.[5]Â  He believed his father was in a relationship
with Rosie DeLeon in 2000 or 2001 Â[b]ecause when he was in town he stayed with
Ms. DeLeon.Â  And every meeting I had with
him she was present.ÂÂ  McRorey was
incarcerated on a drug possession conviction from 1998 until 2007. Â She met Lyles in 1997, prior to
imprisonment.Â  Both McRorey and her
daughter, Courtney Saucedo, claimed that Landers introduced Lyles as his
girlfriend and that neither was aware they had been married until sometime
after the ceremonial marriage.Â  

Â Â Â Â Â Â Â Â Â Â Â  As
to the element of cohabitation, Saucedo came to visit Landers in a farmhouse in
1996 when she was twelve years old and believed that LandersÂ former
girlfriend, Karen Huskill, was living there at the time.Â  Lyles testified that she lived with Landers
in the farmhouse during the first year they lived together.Â  Thereafter, they moved to another home.Â  According to Lyles, Huskill was the former
girlfriend of Landers and the Âland was in Ms. HukillÂs [sic] name but actually
owned by Mr. LandersÂ; the farmhouse was conveyed to Landers by Huskill in
1994. 

Â Â Â Â Â Â Â Â Â Â Â  To
support the theory that the parties were not cohabitating, McRorey also stated
that Lyles Âhad her own place.ÂÂ  Lyles
did own a residence until it burned down in a fire in 1997.Â  Although McRorey testified she believed Lyles
was not living with her father, McRorey contradicted her testimony by later
saying that her father said Â[b]asically they lived togetherÂ during this time
period.Â  

Â Â Â Â Â Â Â Â Â Â Â  E.Â Â Â Â Â Â Â  Analysis


Â Â Â Â Â Â Â Â Â Â Â  Viewing
the evidence in a light most favorable to the trial courtÂs fact finding, we
conclude, based on Lyles and LandersÂ attorneyÂs testimony and documentary
evidence, that aÂ  reasonable and
fair-minded fact-finder could conclude that Landers and Lyles were married in accordance
with the common-law requirements as of July 12, 1993.Â  The trial court, as fact-finder, was free to
give less weight to DavidÂs, McRoreyÂs, and SaucedoÂs testimony.Â  

Â Â Â Â Â Â Â Â Â Â Â  Again,
they argued that Lyles could not prove that there was an agreement to be
married and that the element of holding out to the public as married could not
be met because the immediate family did not have knowledge of the marriage
relationship.Â  The court in Giessel rejected a similar argument
presented by Âcousins and their spousesÂ who were unaware that Giessel was
living with Kuchera, found to be his common-law wife.Â  734 S.W.2d at 30, 32 (fact-finder was free to
place less weight on testimony from GiesselÂs relatives that ÂGiessel never
brought or talked about Kuchera on the several occasions that he attended
family functionsÂ).Â  That the agreement
to be married was unannounced to an estranged son, long-time incarcerated
daughter, and twelve-year-old grandchild did not persuade the trial court that
an agreement to marry did not exist. Â Given
documentary evidence in the form of deeds listing Landers as married and
testimony from LandersÂ attorney that the couple was married prior to the
ceremonial marriage, the court was free to discount contrary testimony
attempting to negate the elements of an agreement to be married and holding out
to the public as married. 

Â Â Â Â Â Â Â Â Â Â Â  As
to the issue of cohabitation, the trial court was free to believe LylesÂ
testimony.Â  While there was conflicting
evidence on the issue, the trial court heard the witnesses testify and had the
opportunity to judge their credibility and resolve the conflicting
evidence.Â  

Â Â Â Â Â Â Â Â Â Â Â  Because
we will not substitute our opinion for that of the trial judge, we cannot
conclude that a finding that Landers and Lyles were common-law married as of
July 12, 1993, was so contrary to the overwhelming weight and preponderance of
the evidence that it was clearly wrong and manifestly unjust.Â  We find the evidence both legally and
factually sufficient. 

Â Â Â Â Â Â Â Â Â Â Â  We
affirm the judgment of the trial court.Â  

Â Â Â Â Â Â Â Â Â Â Â  

Â 

Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â  Jack
Carter

Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â  Justice

Â 

Date Submitted:Â Â Â Â Â Â Â Â Â  August
4, 2010

Date Decided:Â Â Â Â Â Â Â Â Â Â Â Â  September
1, 2010

Â 











[1]The
Texas Family Code recognizes marriages without formalities.Â  Included in such marriages are relationships
which Texas law has classified as common-law marriages.Â  Tex.
Fam. Code Ann. Â§ 2.401(a)(2) (Vernon 2006).Â  In this opinion, we will use the Âcommon-lawÂ
marriage terminology.Â  

Â 





[2]For
clarity, David Charles Landers will be referred to as Landers, while his son,
David Landers, will be referred to as David. 





[3]David
and McRorey argue that because LylesÂ testimony was not corroborated by other
evidence, it was insufficient.Â  They cite
to the statement that Â[i]f one of the parties is dead, the survivor will be
required to meet the limitation imposed by Rule 601(b) of the Texas Rules of
Evidence by providing corroboration of an alleged transaction with the
decedent.ÂÂ  Russell, 865 S.W.2d at 932. Â Rule 601(b) is a rule of evidence governing
admission of statements made by the decedent. Â Failure to object to the statement waives the
exclusionary provisions of the Dead ManÂs Statute. Â Voigt v. Underwood, 616 S.W.2d
266, 269 (Tex. Civ. App.ÂSan Antonio 1981, writ refÂd n.r.e.).Â  Because no objection to LylesÂ testimony was
made, we will not address the Rule 601(b) argument.Â  Tex.
R. Evid. 103(a)(1).

Â 





[4]Landers
had previously executed a 1999 will leaving property to Lyles.Â  His attorney testified, Â[LandersÂ] intent
throughout this was to be sure that [Lyles] was taken care of.Â  He had had a very up-and-down relationship
with his kids.ÂÂ  





[5]David
also testified that he did not meet Lyles until 2005.Â