# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-07-00220-CV

**Lee Godfrey, Jr., Appellant**

**v.**

**Elizabeth Godfrey, Appellee**

### FROM THE DISTRICT COURT OF HAYS COUNTY, 207TH JUDICIAL DISTRICT
### NO. 07-0104, HONORABLE WILLIAM HENRY, JUDGE PRESIDING

## M E M O R A N D U M   O P I N I O N

Claiming past incidents of family violence and the threat of future ones, appellee Elizabeth Godfrey, with her two children, left the home she had been sharing with appellant Lee Godfrey, Jr., in January 2007, and obtained a temporary protective order restricting Lee's access to her and the children.[1] Subsequently, following an evidentiary hearing before the district court, the court entered a final protective order, effective for two years, forbidding Lee from committing any act of family violence; directly communicating with Elizabeth or the children; engaging in any conduct directed toward any member of Elizabeth's family or household "that is reasonably likely to harass, annoy, alarm, abuse, torment or embarrass that person"; or, except for supervised visitation ordered by the court, going within 200 yards of Elizabeth or her family or household, her residence,

---

[1] To avoid confusion because of the common surname, we will refer to the parties by their first names.

her place of employment, or any school or child-care facility attended by the children. The protective order incorporated findings that Lee had committed family violence and that family violence is likely to occur in the foreseeable future. *See* Tex. Fam. Code Ann. § 85.001 (West 2002), § 85.022 (West Supp. 2007) (conditioning family violence protective orders on findings that family violence has occurred and is likely to occur in the future).

Lee appeals. In a single issue, he contends that the evidence was legally and factually insufficient to support the district court's findings that he had committed family violence and that family violence is likely to occur in the future. We sustain a legal sufficiency complaint if the record reveals: (a) the complete absence of a vital fact; (b) the court is barred by rules of law or of evidence from giving weight to the only evidence offered to prove a vital fact; (c) the evidence offered to prove a vital fact is no more than a mere scintilla; or (d) the evidence establishes conclusively the opposite of the vital fact. *City of Keller v. Wilson*, 168 S.W.3d 802, 810 (Tex. 2005). The ultimate test for legal sufficiency is whether the evidence at trial would enable reasonable and fair-minded people to make the finding under review. *See id.* at 827.

When the evidence offered to prove a vital fact is so weak as to do no more than create a mere surmise or suspicion of its existence, the evidence is less than a scintilla and, in legal effect, is no evidence. *See Ford Motor Co. v. Ridgway*, 135 S.W.3d 598, 601 (Tex. 2004). But more than a scintilla of evidence exists if the evidence rises to a level that would enable reasonable and fair-minded people to differ in their conclusions. *Id*. We review the evidence in the light favorable to the finding, crediting favorable evidence if a reasonable fact-finder could and disregarding contrary evidence unless a reasonable fact-finder could not. *See City of Keller*, 168 S.W.3d at 807.

When reviewing a challenge to the factual sufficiency of the evidence supporting a vital fact, we must consider, weigh, and examine all of the evidence in the record, both supporting and against the finding, to decide whether the finding should be set aside. *Plas-Tex, Inc. v. U.S. Steel Corp.*, 772 S.W.2d 442, 445 (Tex. 1989); *Pool v. Ford Motor Co.*, 715 S.W.2d 629, 635 (Tex. 1986). We should set aside the finding only if the evidence that supports the finding is so weak as to be clearly wrong and manifestly unjust. *See Cain v. Bain*, 709 S.W.2d 175, 176 (Tex. 1986).

During the hearing, Elizabeth testified to an incident of violence that occurred at approximately 4 a.m. on January 16, 2007. Elizabeth stated that at approximately 2 a.m., while she was in bed with their one-and-a-half year-old daughter, she became aware that Lee had taken her purse from the room and begun to rifle through it. She recounted that, around 4 a.m., Lee, whom she described as "frustrated, stressed, mad, [and] angry," began demanding to speak with her. This also woke up the child. Elizabeth initially ignored him. Eventually, she recounted, Lee began "yelling at me to come out" to their living room to discuss "some friends' phone numbers in my purse from work . . . who those people were." Lee, Elizabeth claimed, came closer, yelling in a manner that his saliva was hitting her. By that time, she observed, she was holding their young daughter, who "was afraid . . . started shaking [and] trembling in my arms." Lee, according to Elizabeth, "told her that daddy was not going to hit mommy," an act that she "believe[d]" her daughter had seen Lee commit previously. The second child, she added, was also crying and upset. Then, Elizabeth recounted, Lee "grabbed a handful of my hair," which hurt her, and she acceded to his demands to come talk to him in the living room.

As she sat on the living room couch, Elizabeth testified, Lee angrily questioned her about the phone numbers he had found as well as names of friends with whom she had gone out the preceding Saturday; "[h]e wanted their name, address, phone number, what they had to eat." Elizabeth noted that Lee was bipolar and had confided that he had not been taking his medications, that "he was using cocaine, speed, [or] methamphetamine" and had offered her drugs that night, and that he had used drugs "our whole marriage."[2] Elizabeth dialed 9-1-1 and set the still-connected phone down on a dresser; she explained that during previous calls to 9-1-1, Lee "ha[d] taken the phone away or prevented me . . . from dialing it." Lee saw the phone, unplugged it from the jack, and continued yelling at her. The sheriff's office responded.

Elizabeth testified that Lee had committed other acts of violence against her, including an incident on January 7, 2007, in which he tried to prevent her from driving a vehicle to work after their insurance had lapsed. During this incident, Elizabeth recounted, Lee "pushed me in the chest," causing her to fall backwards onto a couch where both of their children were sitting. During the previous evening, she added, Lee had attempted to rape her, and had previously sexually assaulted her "[m]ore than a dozen" times. Elizabeth also presented evidence regarding a 2005 incident when she "was trying to leave" and Lee "crawled up on the hood of the car and punched the windshield" while she, pregnant, was inside. She introduced a photograph of the broken windshield. Elizabeth testified that she did not leave that night and was afraid to do so.

---

[2] In fact, Elizabeth acknowledged that she had used drugs with Lee as recently as a month before the incident.

Elizabeth decided that "it was enough" and left the house with her children on January 21, leaving behind many of their belongings, and filed assault charges and an application for a protective order. Elizabeth claimed that this was her first opportunity to leave following the January 16 incident. It was undisputed that an ice storm had hit the area on January 16—law enforcement who responded that morning had chains on their tires. Elizabeth further explained that she had not sought the assistance of law enforcement in leaving during the morning of January 16 because she had believed she would have had to leave her children behind.

Elizabeth testified at trial that she was afraid that Lee would be violent in the future and feared for her safety and that of the children, noting that "[h]e has told me in the past that if I ever left that he could come find me." Elizabeth added that she had been "afraid" to leave after past incidents. She further observed that Lee had been placed on probation for illegally carrying a loaded weapon.

In addition to her own testimony, Elizabeth called Deputy Steven Espinoza to testify. Deputy Espinoza described his investigation of the January 16 incident. He recounted that Lee, rather emotionally, had stated that he was bipolar and was apologetic about his behavior. Espinoza noted that it was agreed that Elizabeth and the children would sleep in Lee's parents' separate home on the property for the remainder of the evening, while Lee would remain in the separate structure where his family usually lived.[3] Espinoza added that Lee's father had asked Espinoza to retrieve a loaded gun from the couple's dwelling for safety.

---

[3] Witnesses described the structure as an RV with a built-on area.

Lee testified and disputed Elizabeth's version of events. Regarding the January 16 episode, Lee admitted to being suspicious that Elizabeth was seeing other men, going through her purse, and trying to wake her to talk, but insisted that she had attacked him and that, at most, he had shoved her off of him. Deputy Espinoza testified that Lee made statements to this effect during his investigation of the incident. Lee also called another Hays County deputy, Patrick Cheatham; Lee's mother; and two friends of the couple. During Elizabeth's cross-examination and throughout the testimony of other witnesses, Lee attempted to identify discrepancies between Elizabeth's testimony and prior statements in her protective order application, her statements to law enforcement, and diaries or journals she kept. These purported inconsistences concerned various details related to the alleged incidents, including precisely where Lee was standing when he was yelling at her in bed on January 16, 2007, where the pair were located when Lee grabbed her hair, the degree of violence she had contemporaneously depicted to law enforcement (e.g., whether Lee's grabbing of her hair had caused her pain), and the date of the incident in which Lee allegedly pushed her. Lee also attacked Elizabeth's credibility by suggesting that she had not previously divulged to family, friends or law enforcement, or recorded in her writings, various events she claimed at trial, including the multiple alleged sexual assaults or other acts of violence, even while she purportedly would discuss intimate matters like the couple's sex life. Lee also insisted that her claims of physical abuse, including the pulled-hair incident, were inconsistent with physical evidence. On the other hand, Lee's mother admitted during cross-examination that Lee had a history of mental health problems, including three visits to the state hospital and other incidents in which he had been suicidal, including one in which he was found to have a loaded gun in his car.

6

On appeal, Lee argues that no rational fact finder could have found that he committed family violence or that he was likely to commit family violence in the future "based on the inconsistent, uncorroborated evidence received at trial." Lee further emphasizes that the couple was going through a divorce, suggesting that Elizabeth had the motive to fabricate family violence claims to gain advantage in regard to child custody. *See* Tex. Fam. Code Ann. § 153.004 (West Supp. 2007). Lee urges that the district court "should have appreciated the stakes at hand (i.e., the impending divorce) when assessing the weight to be given the testimony of the applicant" and that "[v]iewing the inconsistent testimony with the prudence required when [a family violence] accusation is leveled in the midst of a divorce or child custody type atmosphere, it is clear that the Court erred in validating crucial testimony provided by appellant and deciding to accord it enough weight to support the family violence finding."

Under both our legal and factual sufficiency standards, the fact-finder is the sole judge of the witnesses' credibility and the weight to be given their testimony. *See City of Keller*, 168 S.W.3d at 819 (under legal-sufficiency standard, the fact-finder is "the sole judge[] of the credibility of the witnesses and the weight to be given their testimony. [It] may choose to believe one witness and disbelieve another. Reviewing courts cannot impose their own opinions to the contrary.") (footnotes omitted); *Pool*, 715 S.W.2d at 635 ("It is a familiar principle that in conducting a factual sufficiency review, a court must not merely substitute its judgment for that of the jury. It is an equally familiar principle that the jury is the sole judge of the credibility of witnesses and the weight to be given to their testimony.") (footnotes omitted). Under these established principles, the matters of which Lee complains are within the province of the district

court to determine. We conclude that the evidence was legally and factually sufficient to support the district court's findings.

We overrule Lee's issue and affirm the district court's order.

_                                                    _____

Bob Pemberton, Justice

Before Chief Justice Law, Justices Pemberton and Waldrop

Affirmed

Filed:   August 8, 2008