

# In The
# Court of Appeals
# Seventh District of Texas at Amarillo

No. 07-14-00443-CV

THE BURKS GROUP, INC., D/B/A INTEGRATED PARTNERS, APPELLANT

V.

INTEGRATED PARTNERS, INC., DALROCK TRANSPORT, L.L.C., JOHN P. BARNETT, DAVID DREILING, AND ALLEN THOMAS GEORGI, APPELLEES

On Appeal from the 44th District Court
Dallas County, Texas
Trial Court No. DC-12-14499, Honorable Carlos Cortez, Presiding

September 28, 2015

## MEMORANDUM OPINION

Before CAMPBELL and HANCOCK and PIRTLE, JJ.

Appellant, The Burks Group, Inc., d/b/a Integrated Partners ("Burks Group"), appeals the trial court's order denying the Burks Group's motion for temporary injunction and reforming a covenant not to compete that was part of an Asset Purchase

Agreement between the Burks Group and appellees, Integrated Partners, Inc. and John P. Barnett.[1] We will affirm.

Factual and Procedural Background

After developing a successful optical courier business, Barnett agreed to sell the business assets to the Burks Group. This purchase was completed on August 21, 2009. The Burks Group paid Barnett $750,000 for substantially all of the tangible and intangible assets of the company.

As part of the purchase, Barnett signed a three-year covenant not to compete. This covenant prohibited Barnett from engaging in a courier or "hot shot" business anywhere in the State of Texas during the three-year term of the covenant. It also specifically restricted Barnett from taking actions that would interfere with the Burks Group's ability to successfully run their optical courier business. Any violation of the covenant would, *inter alia*, toll the applicable period of the covenant.

After selling the optical courier business to the Burks Group, Barnett made some investments in the stock market and in real estate but those investments did not work out. Needing income, Barnett worked for a couple of roofing businesses. In October of 2010, Barnett began working for Celerity Logistics. Celerity Logistics is a delivery service but is not in the optical courier business. Barnett was laid off by Celerity Logistics in August of 2012.

---

[1] Dalrock Transport, L.L.C., is a business created by Barnett to compete with the Burks Group after the expiration of the three-year term of the covenant not to compete. David Dreiling and Allen Thomas Georgi were courier drivers for the Burks Group that began working for Dalrock after it was created.

At the time that his employment with Celerity Logistics ended, the three-year term of the covenant not to compete was set to expire. As such, Barnett decided to see if he could get back into the optical courier business. After the three-year period had passed, Barnett met with representatives of the three major optical manufacturers to see whether they might be interested in using him and his new business as their optical courier. One of the representatives indicated that his company was unhappy with the service that the Burks Group was providing and that they would be interested in using Barnett's new company.[2] On this basis, Barnett created Dalrock Transport, L.L.C. All three major optical manufacturers entered into courier service contracts with Dalrock.

The Burks Group filed suit against Barnett alleging breach of contract, breach of the covenant not to compete, and tortious interference with contract. Essentially, the basis for all of these complaints is the Burks Group's contention that Barnett violated the covenant not to compete by working for Celerity Logistics, and that this violation tolled the period covered by the covenant for the two years that Barnett worked for Celerity Logistics. As such, even though Barnett's formation of Dalrock was outside of the three-year period identified on the face of the covenant, the Burks Group contends that these actions violated the covenant because it had been tolled for the entire time Barnett worked for Celerity Logistics.

As part of its filing, the Burks Group sought a temporary injunction. Evidence was taken at the temporary injunction hearing. This evidence established that the request for injunctive relief turned on the enforceability of the covenant as written. After

---

[2] It is undisputed that, if an optical courier business loses the business of any of the three major optical manufacturers, the optical courier business cannot survive.

the hearing, the trial court found the covenant was unreasonable in terms of geographical area and scope of activity and, consequently, reformed the covenant.[3]

At trial, the evidence established that Barnett, as an agent of Dalrock, contacted each of the three major optical manufacturers to determine whether they would be interested in switching their courier service from the Burks Group to Dalrock. It also established that Barnett contacted a number of the drivers that were working for the Burks Group. However, all of these actions, which would violate the covenant not to compete, were undertaken after the expiration of the covenant. Further, the evidence established that the manufacturers were under terminable-at-will contracts with the Burks Group and that the drivers were at-will employees. The jury returned a verdict against the Burks Group on their tortious interference with contract claims.

After the trial, the Burks Group filed a motion for new trial and motion for judgment n.o.v. contending that Barnett admitted interfering with the Burks Group's contracts with the three major optical manufacturers. The trial court denied these motions and the Burks Group filed the instant appeal.

By this appeal, the Burks Group presents three issues. Its first issue contends that the trial court erred in reforming the covenant not to compete at the hearing on the temporary injunction. By its second issue, the Burks Group contends that the trial court erred in the manner that it reformed the covenant. Finally, by its third issue, the Burks Group contends that the trial court erred in denying its motions for new trial and for

---

[3] Before trial began, the Burks Group affirmatively withdrew its claims for breach of the covenant.

4

judgment n.o.v. because the jury's verdict was against the great weight and preponderance of the evidence.

### Issue One: Timing of Reformation of the Covenant Not to Compete

By its first issue, the Burks Group contends that the trial court erred by reforming the covenant not to compete at the temporary injunction hearing. According to the Burks Group's argument, the trial court could not reform the covenant until after trial.

A covenant not to compete is enforceable if it is ancillary to or part of an otherwise enforceable agreement at the time the agreement is made to the extent that it contains limitations as to time, geographical area, and scope of activity to be restrained that are reasonable and do not impose a greater restraint than is necessary to protect the goodwill or other business interest of the promisee. TEX. BUS. & COM. CODE ANN. § 15.50(a) (West 2011).[4] A court has a statutory duty to reform a covenant not to compete that it finds to be unreasonable as to time, geographical area, and/or scope of activity or that imposes a greater restraint than is necessary to protect the goodwill or business interest of the promisee. § 15.51(c) (West 2011). If the court reforms a covenant, the promisee cannot recover damages for any breach of the covenant that occurred prior to the reformation. *Id.*

By its first issue, the Burks Group challenges the timing of the trial court's reformation of the covenant. Specifically, it contends that reformation is a final remedy, and that the trial court erred by reforming the covenant not to compete at the temporary

---

[4] Further citation to sections of the Texas Business and Commerce Code will be by reference to "section __" or "§ __."

injunction hearing. According to the Burks Group's argument, the trial court did not have all of the evidence relevant to reformation before it at the temporary injunction hearing and, therefore, it was "fundamental error" for the trial court to reform the covenant when it did.

The Burks Group's argument for a temporary injunction was not that Barnett's foundation and operation of Dalrock violated the covenant during its natural term. Rather, the argument was that Barnett's employment at Celerity Logistics was a violation of the covenant that tolled the covenant for a period equal in length to Barnett's employment at Celerity. Based solely on that tolling, the Burks Group contends that Barnett's Dalrock activities violated the covenant. As such, the temporary injunction sought by the Burks Group was not "to preserve the status quo of the litigation's subject matter pending a trial on the merits." *Butnaru v. Ford Motor Co.*, 84 S.W.3d 198, 204 (Tex. 2002). Rather, it was an attempt to invoke the tolling provision of the covenant so that the status quo, Barnett's operation of Dalrock, must be altered.

The evidence was sufficient to establish that, as written, Barnett violated the covenant by working for a courier service, Celerity Logistics. However, before it could enforce the covenant, the trial court was required to assess whether the covenant was reasonably limited in terms of time, geographical area, and scope of activity, and whether it was restrained as much as necessary to protect the goodwill or other business interest of the Burks Group. *See* § 15.50(a). Further, if the court determined that the covenant was not reasonably limited, it was under an affirmative duty to reform the covenant. *See* § 15.51(c). We can find no provision instructing the courts when such reformation should occur.

6

We conclude that the trial court did not err in reforming the covenant at the temporary injunction hearing in this case. This case did not involve a typical request for a temporary injunction to preserve the status quo. Rather, the request depended on an interpretation of the covenant that, if successful, would alter the status quo. Because it was attempting to invoke the tolling provision of the covenant, the Burks Group had to fully present the terms of the covenant as to time, geographical area, and scope of activity so that the trial court would be able to determine whether the covenant was violated by Barnett's employment at Celerity. As such, the facts relevant to interpreting the covenant were before the trial court. The trial court was called upon to enforce the covenant by way of a temporary injunction. The statute, without giving any express guidance as to timing, specifically provides that, for a covenant to be enforceable, the trial court must determine whether the covenant is reasonably limited in terms of time, geographical area, and scope of activity, and whether it is restrained as much as necessary to protect the goodwill or other business interest of the promisee. *See* § 15.50(a). Consequently, before the trial court could enforce the covenant as requested by the Burks Group, the trial court had to determine whether the covenant was reasonably limited to the purpose for which it was issued. In making this assessment, the trial court found that the covenant was not reasonably limited as to geographical area or scope of activity. Upon making these findings, the statutory duty to reform the covenant arose. *See* § 15.51(c). As such, we conclude that, limited to the facts in this case, the trial court did not err in reforming the covenant at the temporary injunction hearing and overrule the Burks Group's first issue.

Issue Two: Terms of the Reformed Covenant Not to Compete

By its second issue, the Burks Group contends that the trial court erred in the manner in which it reformed the covenant not to compete because, by its reformed terms, the covenant was rendered meaningless.

As applicable to the present case, the terms of the covenant not to compete in this case provide that, for a period of three years, Barnett could not "[b]e employed by any person, venture, partnership or other entity . . . that is a courier or 'hot shot' business . . . within the proscribed market area."  The "proscribed market area" is elsewhere defined as the "State of Texas."  After hearing the evidence and arguments presented at the temporary injunction hearing, the trial court found that the covenant is unreasonable in geographical area and scope of activity and imposes a greater restraint than necessary to protect the good will or business interest of the Burks Group.  As such, the trial court reformed the covenant to prohibit Barnett from "being employed by any person, venture, partnership or other entity that is a courier or 'hot shot' business providing services only to customers in the optical industry that were actual customers of INTEGRATED PARTNERS, INC. between August 21, 2009 and August 21, 2012."

The Burks Group contends that the language used by the trial court in reforming the covenant renders it meaningless.  Specifically, it contends that, as reformed, the covenant prohibits Barnett from working for a business that serviced only the customers of Integrated Partners, Inc., but the Burks Group was operating the business as Integrated Partners.  Integrated Partners, Inc. was the name of the business operated by Barnett.  Thus, according to the Burks Group, the trial court's reformation was

meaningless because it prohibited Barnett from working for anyone that serviced the customers of a company that no longer existed. In addition, the Burks Group contends that the covenant, as reformed, would allow Barnett to compete directly with the Burks Group's business so long as Barnett serviced at least one customer that the Burks Group did not service. This literal construction is based on the phrase "that serviced *only* the customers of Integrated Partners, Inc." (emphasis added).

Of particular note, the Burks Group does not challenge the bases upon which the trial court reformed the covenant not to compete. Rather, the Burks Group advances the arguments identified above regarding the misidentification of the business interest that was to be protected and the literal scope of the prohibition. However, such an obvious typographical error or misnomer must be raised in the trial court or it is waived. *See Hernandez v. ISE, Inc.*, No. 04-06-00888-CV, 2008 Tex. App. LEXIS 81, at *11-13 & n.2 (Tex. App.—San Antonio Jan. 9, 2008, no pet.) (mem. op.); *see generally* TEX. R. APP. P. 33.1. Also, the construction of the reformed covenant given by the Burks Group, while literally correct, is absurd and clearly not what was intended by the trial court nor the understanding of either party. Had these issues been brought to the trial court's attention, they could have been easily corrected. The Burks Group does not contend that it was misled by the reformed covenant. As such, the Burks Group has not shown how it was harmed by the trial court's reformation of the covenant not to compete. *See* TEX. R. APP. P. 44.1(a).

Because the Burks Group failed to preserve its complaint regarding the manner in which the trial court reformed the covenant not to compete, we overrule its second issue.

Issue Three: Tortious Interference Claim

By its third issue, the Burks Group contends that the trial court erred in denying its motions for judgment n.o.v. and new trial because the jury's verdict on the Burks Group's claims of tortious interference with contract is factually insufficient.

In a factual sufficiency review, we consider all of the evidence both supporting and contrary to the fact finder's answer to the fact question at issue. *See Plas-Tex, Inc. v. U.S. Steel Corp.*, 772 S.W.2d 442, 445 (Tex. 1989). Because the Burks Group bore the burden of proving Barnett tortiously interfered with a contract at trial, we will only reverse if we find that the evidence supporting the jury's verdict is so weak or so contrary to the verdict as to be clearly wrong and manifestly unjust. *See Raw Hide Oil & Gas, Inc. v. Maxus Exploration Co.*, 766 S.W.2d 264, 276 (Tex. App.—Amarillo 1988, writ denied). When conducting a factual sufficiency review, we may not substitute our judgment for that of the fact finder. *See Golden Eagle Archery, Inc. v. Jackson*, 116 S.W.3d 757, 761 (Tex. 2003). Additionally, the fact finder is the sole judge of the credibility of the witnesses and the weight to be given to their testimony. *See id.*

The elements of a tortious interference with contract claim are: (1) plaintiff had a valid contract; (2) defendant willfully and intentionally interfered with the contract; (3) the interference proximately caused plaintiff's injury; and (4) plaintiff incurred actual damage or loss. *See Powell Indus., Inc. v. Allen*, 985 S.W.2d 455, 456 (Tex. 1998) (per curiam).

In this case, Barnett testified that he knew that the Burks Group and the optical manufacturers were in contract at the time he sold his interest to the Burks Group but that those contracts would have expired before he had any contact with those

manufacturers. He also testified that none of the optical manufacturers informed him that they had renewed their contracts with the Burks Group or that they were under any continuing contractual obligation with the Burks Group. As such, Barnett possessed no knowledge of the existence of a contract such that he could have interfered with it "willfully and intentionally." Further, Barnett did not induce the optical manufacturers into breaching any contract it might have with the Burks Group. Rather, Barnett inquired into the willingness of the optical manufacturers to switch courier services and, when he received affirmative responses, he solicited business for Dalrock. The jury was free to believe that the optical manufacturers' desire to switch courier services indicated that the optical manufacturers were not under contract with the Burks Group. Because the evidence that Barnett did not willfully and intentionally interfere with any contract that the Burks Group had with the optical manufacturers was factually sufficient, we overrule the Burks Group's third issue.

## Conclusion

Having overruled each of the Burks Group's issues, we affirm the judgment of the trial court.


Mackey K. Hancock
Justice

11